UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KATIA HILLS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | CASE NO. 3:17-cv-556-JD-MGG |
| AT&T MOBILITY SERVICES, LCC, | ) |  |
| a/k/a AT&T Mobility LLC, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**OPINION AND ORDER**

On May 14, 2018, Plaintiff, Katia Hills ("Hills"), filed her Motion for Leave to Add New Party and Class Action Allegations to Second Amended Complaint. [DE 36]. Hills seeks the Court's permission to add Cynthia Allen as an additional named plaintiff in her putative class action. On May 29, 2018, Defendants, AT&T Mobility Services LLC ("AT&T Mobility") and AT&T Services, Inc. ("AT&T Services") (collectively "AT&T") filed their Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend. [DE 44]. Hills's Motion to Amend became ripe on June 5, 2018, when she filed her reply brief. [DE 48].

On the same day, Hills also filed a Conditional Motion to Transfer Venue [DE 47]. Hills asks the Court to transfer this case to the Northern District of Georgia in the event she is not granted permission to add Allen as a plaintiff in this action. AT&T objected to the requested transfer in their response brief filed on June 19, 2018 [DE 53]. The Motion to Transfer became ripe when Hills filed a reply brief on June 26, 2018. [DE

54]. Notably, Hills filed a Notice on August 3, 2018, informing the Court that the day before, Cynthia Allen filed a complaint in the Northern District of Georgia to preserve her claims in case Hills's Motion to Amend is denied in this Court. [DE 57].

As explained below, the Court grants Hills's Motion to Amend as to the class action allegations but denies the Motion to Amend as to the addition of Allen as a plaintiff. Further, the Court denies Hills's Motion to Transfer.

I.  **RELEVANT BACKGROUND**

This action arises from AT&T's alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the American with Disabilities Act ("ADA"), and the Family Medical Leave Act ("FMLA") related to Hills's employment with an AT&T Mobility retail store in Indiana, between April 2014 and July 2015. Hills filed her original complaint with this Court on July 14, 2017, alleging disparate treatment based on sex arising from her pregnancy as well as claims of sexual harassment under Title VII; failure to provide a reasonable accommodation under the ADA; and interference and retaliation under the FMLA.

In support, Hills alleged discrimination in AT&T's application of its "Sales Attendance Guidance" policy ("SAG") under which employees accrue "points" or fractions thereof for unexcused absences and tardiness. Points can be avoided if an absence qualifies as "excused" under SAG. SAG delineates thirteen categories of excused absences, none of which explicitly relate to pregnancy. Hills was terminated after accruing points under SAG for a series of unexcused absences arising from her pregnancy. Hills alleges that AT&T applied SAG more strictly against her than against

2

male or non-pregnant employees; that her store manager was hostile toward her pregnancy; and that her FMLA request related to her pregnancy was denied improperly. On February 6, 2018, however, Hills filed her First Amended Complaint—the current operative complaint—raising only the FMLA claims.

Meanwhile, Hills had filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") adding claims that similarly situated employees were being treated like her. Allen also had a similar Charge pending before the EEOC. Allen, an AT&T Mobility employee in two New York stores and one Nevada store from December 2012 through April 2017, had received excused leave for her pregnancy-related medical needs for her two pregnancies in New York but was terminated in Nevada after accumulating points during her third pregnancy and while tending to her newborn child. In her EEOC Charge, Allen alleged that she was unable to secure excused absences and faced hostility from her Nevada store manager, without help from an area manager, when seeking assistance with her FMLA requests under SAG.

Both EEOC Charges explained that AT&T amended SAG in the spring of 2015, in the middle of both Hills's and Allen's tenure with AT&T Mobility. Hills outlined the changes to the point accrual policy, including but not limited to, a shift in who was authorized to make exceptions in the application of SAG. Hills reported that the old policy allowed exceptions to SAG "in an employee's supervisor's discretion" while the new policy allowed SAG exceptions "at the company's discretion." [*Compare* DE 30-1 at 4, ¶ 8, *with* DE 30-1 at 5, ¶ 11].

After Hills informed this Court of the pending status of both hers and Allen's EEOC Charges through a motion to stay [DE 18] and a subsequent status report [DE 30], the Court directed her to request a Right to Sue letter from the EEOC to keep this case progressing. [DE 32]. Having timely made that request, Hills filed the instant Motion to Amend on May 14, 2018. Hills's proposed Second Amended Complaint adds Allen as a named plaintiff and presents class action allegations focused on the alleged creation, implementation, and enforcement of SAG by a corporate level committee rather than by local managers. [DE 37].

AT&T does not object to the addition of class action allegations, but argues that Allen cannot be joined because (1) her claims do not arise out of the same transactions or occurrences as required under Fed. R. Civ. P. 20, (2) Allen's and Hills's claims turn on disparate evidence and witnesses, and (3) the proposed joinder would be futile because this Court does not have personal jurisdiction over AT&T with respect to Allen's claims. AT&T also objects to Hills's alternative motion for transfer contending that (1) Hills is attempting improper forum shopping by seeking transfer, (2) Georgia is neither a proper nor convenient forum given the location of key witnesses in Indiana not Georgia, and (3) the interests of justice related to judicial efficiencies favor this forum. Hills, on the other hand, argues that the interests of justice warrant transfer—in the event Allen is not added as a plaintiff in this action—to prevent inconsistent results between her putative class action here and the Allen putative class action already filed in Georgia.

## II. ANALYSIS

### A. Amend to Add Class Allegations

Without any objection from AT&T, the Court finds no reason to deny Hills's request to amend her complaint to add class action allegations. Moreover, granting this requested amendment comports with the liberal standard for amendment set forth in Fed. R. Civ. P. 15(a)(2), which provides that the court should "freely give leave" to amend a pleading "when justice so requires." *See also Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

### B. Amend to Add Plaintiff

#### 1. Rule 20 Same Transaction or Occurrence Requirement

Hills's request to amend her complaint to add Allen as named plaintiff, however, cannot be granted. Under Fed. R. Civ. P. 20(a)(1), a court may grant permissive joinder of a plaintiff only if the person seeking joinder seeks a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." As to the first prong of Rule 20(a)(1), "the Seventh Circuit has not yet fashioned a definitive standard for determining what constitutes a single transaction or occurrence." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009); *see also Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000); *Maclin v. N. Telecom, Inc.*, No. 95 C 7485, 1996 WL 495558, at *6 (N.D. Ill. Aug. 28, 1996). "As a result, district courts utilize a case-by-case approach and consider the following factors:

5

> [T]he time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged.

*Id.* (quoting *Berry v. Ill. Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001)). Courts consider these factors in light of the purpose of Rule 20, "to promote trial convenience and expedite the final determination of disputes, thereby preventing unnecessary multiple lawsuits." *Maclin*, 1996 WL 495558, at *6. Thus, Rule 20 is liberally construed to allow permissive joinder so as to promote judicial efficiency, especially when there is no prejudice to the opposing party. *United States v. Berg*, 714 F.3d 490, 494 (7th Cir. 2013); *In re Monon Tel. Co.*, 218 F.R.D. 614, 616 (N.D. Ind. 2003) (citing *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1011 (7th Cir. 1988)). Courts must "entertain[] the broadest possible scope of action consistent with fairness to the parties" such that "joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Here, Hills's and Allen's claims are both based on the accumulation of attendance points under the SAG policy as the result of pregnancy-related absences. However, they did not work in the same AT&T store; they had different supervisors who were responsible to different district and area managers; and the Indiana and Nevada stores where they worked at the time of the alleged discrimination were distant from each other. Moreover, they both faced different pregnancy or child-rearing issues that led to the assignment of attendance point and ultimately their terminations.

6

Hills relies heavily on her allegation that she and Allen were discriminated against because of the same company-wide policy, the SAG policy. Indeed, Hills's proposed Second Amended Complaint does frame the class allegations as related to SAG as well as alleging corporate rather than local application of SAG to individual employees like herself, Allen, and others similarly situated. However, both Hills's and Allen's EEOC Charges [DE 30-1 and DE 30-2] are fundamentally grounded in alleged discrimination based upon the conduct of the local supervisors and managers without any specific corporate allegations beyond the existence of policies and a patterns or practices of discrimination that continue to affect them and those similarly situated.

As a result, Hills's and Allen's situations resemble the situation faced in *McDowell* despite Hills's argument to the contrary. In *McDowell*, the court was presented with a motion to sever for improper joinder arguing that the plaintiffs' claims did not arise out of the same transaction, occurrence, or series of transactions or occurrences as required under Fed. R. Civ. P. 20. 645 F. Supp. 2d. at 695. The *McDowell* plaintiffs alleged discriminatory conduct based upon a company-wide policy, but the court noted that the relevant conduct was rooted in the individual decisions of different supervisors, at different times, in four different offices. 645 F. Supp. 2d at 695. Accordingly, the court in *McDowell* found that the claims challenged not only the policy but also the individual discretionary decisions of the supervisors applying the policy. *Id.* The *McDowell* plaintiffs also disputed whether the success of their claims was dependent upon the individualized discretionary decision. *Id.* Yet the court in *McDowell* found that the relevant decisions were nevertheless personalized and disconnected such

7

that they were not intertwined or sufficiently related to justify joinder. *Id.* at 695–96. Therefore, the court found misjoinder and severed the case for lack of a common transaction or occurrence. *Id.* at 697.[1]

In distinguishing *McDowell*, Hills directs the Court's attention to the fact that she is attempting to add Allen as a named plaintiff in a putative class action rather than as a co-plaintiff in an individual action like *McDowell*. In support, Hills cites to multiple cases suggesting that addition of a named plaintiff is a common and routine feature of class action litigation. [DE 48 at 10–11 (collecting cases and comparing them to the liberal joinder standard set forth in *Gibbs*, 383 U.S. at 724)]. Hills notes that she and Allen both intend to pursue a nationwide class action and raises concern that two separate class actions in different District Courts could create a risk of inconsistent or varying adjudications.

Indeed, such a risk is one of the rationales for the class action mechanism. *See* Fed. R. Civ. P. 23(b)(1)(A). However, even with the addition of class allegations, this action would not be a class action until a class was certified by the Court. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006). Thus, the Court—at this early stage of litigation before a motion for class certification has even been filed—must address the

---

[1] *See also McDowell*, 645 F. Supp. 2d at 695–96 ("Rule 20 does not operate without limitation; this is precisely the type of joinder that Rule 21 was designed to curb. *Berry*, 2001 WL 111035, at *17 (finding misjoinder and severing claims where among other things the plaintiffs were employed at six different facilities, had different supervisors and had few common defendants); *Maclin,* 1996 WL 495558, at *7 (severing claims as misjoined where the discrimination took place at different times, involved different people and was committed by different supervisors in different departments); *cf. King v. Gen. Elec. Co.,* 960 F.2d 617, 626 (7th Cir. 1992) (finding abuse of discretion where trial judge consolidated claims pursuant to Rule 42(a) that involved different time periods and different allegations)").

8

instant joinder request as it would an ordinary case involving a single plaintiff attempting to add an additional plaintiff. That is, proper joinder requires a right arising "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A).

Despite any connection to a common corporate policy, Hills's and Allen's claims are inextricably intertwined with the unique circumstances of their pregnancies, the recommendations of their supervisors, and their FMLA applications. Even corporate decisions to award attendance points, to refuse to excuse attendance points, or to terminate Hills's and Allen's employment would be dependent on highly personalized transactions or occurrences at different times and places. Notably, Hills and Allen allege that the discrimination against them occurred because of disparate treatment of the SAG policy. Thus, they have made their own personal interactions with the policy, rather the policy alone, the focus of the lawsuits. In so doing, they are not presenting claims arising from related transactions or occurrences let alone the "same" transaction or occurrence required under Rule 20.

### 2. Personal Jurisdiction over AT&T for Allen's Claims

Even if Hills's and Allen's claims arose from the same transaction or occurrence, Allen's claims would be futile in Indiana. As a general rule, district courts should liberally grant leave to amend pleadings. Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 854 (7th Cir.), *reh'g denied,* No. 16-1711, 2017 WL 2726577 (7th Cir. May 16, 2017), and *cert. denied sub nom. Mulvania v. Rock Island Cty. Sheriff,* 138 S. Ct. 361 (2017). However, "district courts have

9

broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). "A new claim is futile if it would not withstand a motion to dismiss." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001).

AT&T correctly argues the futility of adding Allen as a plaintiff in this case because this Court lacks personal jurisdiction over it for Allen's claims. Unless otherwise authorized by a federal statute, a federal court's ability to exercise personal jurisdiction over a defendant is generally subject to the same territorial limitations that apply to courts of the forum state. Fed. R. Civ. P. 4(k)(1); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Allen's claims would be raised under Title VII, the ADA, and the FMLA, none of which contain an authorization that would support jurisdiction in Indiana over Allen's claims.[2] Therefore, to retain jurisdiction over Allen's claims, personal jurisdiction must exist consistent with the laws of Indiana. Fed. R. Civ. P. 4(k)(1).

---

[2] Claims under Title VII and the ADA are subject to 42 U.S.C. § 2000e-5(f)(3), which authorizes jurisdiction

> in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

FMLA claims "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." 29 U.S.C.A. § 2617(a)(2).

Courts in Indiana "may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. R. Tr. P. 4.4(A). Jurisdiction can be "'general' (sometimes called 'all-purpose') or 'specific' (sometimes called 'case-linked')." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). Federal due process permits the exercise of general jurisdiction over a corporation only in its formal place of incorporation, its principal place of business, or "in an exceptional case" where a corporation's operations in another state are "so substantial and of such a nature as to render the corporation at home" there. *Daimler*, 571 U.S. at 139 n. 19.

Here, AT&T Mobility is incorporated in Delaware and is headquartered in Georgia while AT&T Services is incorporated in Delaware and headquartered in Texas. Additionally, Hills presents no exceptional circumstances to convince the Court that either company is "at home" in Indiana with regard to Allen's claims. Moreover, AT&T Mobility's business locations and employees, regardless of their relation to Allen, are not sufficient to warrant general jurisdiction. *See Bristol-Myers Squibb* (137 S. Ct. at 1782–84). Therefore, Hills has not established general jurisdiction in Indiana over AT&T Mobility or AT&T Services for Allen's claims.

Courts may exercise specific jurisdiction over a corporation only if (1) the defendant has certain purposeful, minimum contacts with the forum; (2) the case or controversy arises from or related to the defendant's minimum contacts; and (3) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justices. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Hanson v. Denckla*, 357 U.S. 235,

253 (1958); *Int'l Shoe*, 326 U.S. at 316. The relevant inquiry for specific jurisdiction is not the quantity of contacts in a state but rather their relationship to the particular plaintiff's claims at issue. *Bristol-Myers Squibb*, 137 S. Ct. at 1781. Here, Hills has not alleged any relationship between either AT&T defendant's minimum contacts in Indiana and Allen's claims as described previously. Moreover, Allen's expected role as a putative class representative does not create the necessary relationship. *See Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 871 (N.D. Ill. 2017) (finding that *Bristol-Myers Squibb* applies to named plaintiffs in a putative class action).

Therefore, Hills has established neither general nor specific jurisdiction in this Court over AT&T Mobility or AT&T Services for Allen's putative class action claims. Without such jurisdiction, Allen's claims are futile such that adding her as a plaintiff in this action is not warranted. Hills's reply brief related to her motion to amend and her conditional motion for transfer imply that she was concerned about this jurisdictional issue, but she raised no explicit argument that personal jurisdiction for Allen's claims existed in this Court. Instead, Hills turned her attention to her alternative request for transfer "in the interest of advancing [hers and Allen's] claims in a single litigation, rather than piecemeal." [DE 48 at 14]. Unable to grant Hills's motion to amend to add Allen as a plaintiff, the Court now considers Hills's alternative motion to transfer.

C. **Alternative Motion to Transfer**

Pursuant to 28 U.S.C. § 1404(a), a federal district court may transfer any civil action to any other district for the convenience of the parties and witnesses and in the name of justice if venue is proper in both courts. Therefore, transfer analysis involves

12

separate inquiries into (1) proper venue in both the transferor and transferee courts; (2) the convenience of parties and witnesses; and (3) the interest of justice. *Research Automation Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The burden is on the movant to show that transfer is warranted. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). However, the statute allows for a "flexible and individualized" analysis of the unique issues raised in a particular civil action, which therefore places considerable discretion in the transferor court when deciding whether transfer is appropriate. *Research Automation*, 626 F.3d at 977–78 (citing *Stewart Org., Inc. v. Ricoh Corp., et al.*, 487 U.S. 22, 29 (1988)).

> 1. **Venue**

Under 28 U.S.C. § 1391(b)[3], a civil action

> may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Hills has not established proper venue pursuant to Section 1391(b) for both this Court and the Northern District of Georgia as required for transfer under Section 1404(a).

As to the first prong, Hills presents nothing to suggest let alone establish that both AT&T Mobility and AT&T Services are residents of Georgia. AT&T Mobility

---

[3] Section 1391(b) must be considered because venue for FMLA claims, like those Hills includes in her complaint, is not determined by any statute in the FMLA, but instead by the Section 1391(b) venue provision. [*See* DE 53 at 15 n.6 (laying out the interaction between the exclusive venue provisions under Title VII and ADA and the FMLA)].

13

admittedly is a Georgia resident, but AT&T Services is incorporated in Delaware with a principal place of business in Texas. And nothing else in the pleadings indicates that AT&T Services is "at home" in Georgia.

As to the second prong, Hills has not demonstrated that a substantial part of the events or omissions giving rise to her claims occurred in Georgia. The record is clear that Hills endured assignment of attendance points under SAG in Indiana and termination from her job with AT&T Mobility in Indiana. Hills argues that the SAG policy was developed and implemented in Atlanta, where AT&T Mobility has its principal place of business and where AT&T Services is also subject to personal jurisdiction. More specifically, Hills relies upon AT&T Services' connection to AT&T Mobility as members of the same business family and contends that AT&T Services purposefully availed itself of the Northern District of Georgia by doing business there in the form of working with AT&T Mobility to develop and implement the company-wide SAG policy that drove the decisions affecting her. The Court is not persuaded.

As discussed above, Hills's challenge to the SAG policy is inextricably linked and intertwined with the unique circumstances related to her pregnancy and the unique decisions and recommendations of the local and area managers overseeing her employment. Moreover, AT&T's Centralized Attendance Group ("CAG") that Hills conclusorily alleges applies and administers the SAG policy includes no individuals from the State of Georgia. Without more, Hills has not shown that a "substantial" part of the events giving rise to her claims occurred in Georgia.

As to third prong, Hills cannot argue that there is no district other than the Northern District of Georgia in which she could have otherwise brought her claims. Her claims are clearly properly venued here in the Northern District. Having failed to establish proper venue in the Northern District of Georgia, transfer is not warranted.

### 2. Convenience

Even if the Northern District of Georgia had been a proper venue for Hills's claims, the most she has been able to show is that both fora are equally convenient. Hills and many of the individuals identified in her complaint that would likely be relevant witnesses are located in Indiana. Assuming that the SAG policy was developed by AT&T Mobility in Georgia, individuals involved in that process along with related records are likely to be located in Georgia. Yet the corporate AT&T witnesses would probably have greater resources to accommodate any necessary travel as part of this litigation compared to those available to Hills and the individual witnesses in Indiana. Therefore, the convenience of witnesses factor might favor litigation in this Court, but is probably of greater benefit to neither party.

### 3. Interests of Justice

The analysis of the public's interest in this case, incorporated into the Section 1404 transfer statute as the interests of justice, focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Research Automation*, 626 F.3d at 978. Factors that are relevant this analysis include: (1) the speediness of trial in either jurisdiction; (2) each court's familiarity with the relevant law; and (3) each location's relationship to the controversy. *Id.* Despite Hills's argument

to the contrary, nothing suggests that trial will occur more quickly in the Northern District of Georgia. An answer has yet to be filed in this case and no Rule 16(b) preliminary pretrial order has been issued to govern discovery. This case remains in the early stages. Additionally, AT&T promises a jurisdictional challenge should the case be transferred to the Northern District of Georgia, which would slow the case down in a way that would not happen in this Court.

Furthermore, both courts are equally familiar with the relevant law. And once again, the controversy in inextricably linked to events in Indiana. The Court acknowledges that the Northern District of Georgia would have an interest in the resolution of claims against a corporation residing there. However, Hills has not shown that valid interest is greater than Indiana's valid interest in the claims growing out of employment issues in its State. Therefore, the interests of justice do not justify transfer.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES IN PART** Hills's motion to amend the complaint to add Cynthia Allen as a plaintiff [DE 36] and **GRANTS IN PART** Hills's motion to amend to add class allegations [DE 36]. Hills's alternative conditional motion to transfer is **DENIED**. [DE 47]. Plaintiff may file a second amended complaint, including the relevant class allegations incorporated into her proposed second amended complaint [DE 37] related to the instant motion to amend, by **December 11, 2018**. The Court **DIRECTS** the Clerk to seal the proposed amended complaint [DE 37] accompanying Hills's instant motion to amend to avoid confusion on the docket going forward.

**SO ORDERED** this December 4, 2018.

                                                                     <u>s/Michael G. Gotsch, Sr.</u>
                                                                     Michael G. Gotsch, Sr.
                                                                     United States Magistrate Judge