UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KATIA HILLS, | ) |
| | ) |
| Plaintiff, | ) Civil No. 3:17-cv-00556-JD-MGG |
| v. | ) |
| | ) |
| AT&T MOBILITY SERVICES LLC | ) |
| a/k/a AT&T MOBILITY LLC and | ) |
| AT&T SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## SECOND AMENDED COMPLAINT

Plaintiff Katia Hills ("Hills") brings this action against AT&T Mobility Services LLC a/k/a AT&T Mobility LLC ("AT&T Mobility") and AT&T Services, Inc. ("AT&T Services") (collectively "AT&T") for violations of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12010 *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").  In support of her Complaint, Hills alleges and states the following:

## INTRODUCTION

AT&T discriminated against Hills because of her sex and disability, retaliated against her for objecting to such misconduct, and violated her right to take medical leave.  Specifically, AT&T maintained a policy pursuant to which certain absences, late arrivals, and early departures were excused; unexcused absences would lead to discipline and eventual termination.  Hills—a high-performing salesperson in AT&T's Elkhart, Indiana retail store—became pregnant in

October 2014.  Defendants subjected her to bias because of her pregnancy, permitting ongoing harassment, expressing hostility and skepticism about her plans to return to work after maternity leave, refusing to excuse absences or late arrivals that were the result of her pregnancy or related conditions, failing to accommodate those conditions and resulting disability, and even refusing to engage in the required interactive process to identity potential reasonable accommodations.  After months of hostility, harassment, and the refusal to accommodate her condition, AT&T discriminatorily terminated Ms. Hills for too many unexcused absences, in violation of Title VII, the ADA, and the FMLA.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

2. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).  AT&T does not contest that venue is proper in this forum for Hills's claims.  *See* AT&T's Resp. to Cond. Mot. to Transfer, Dkt. 53, at 1, 10.

## PARTIES

4. Plaintiff Katia Hills is a woman and a resident and citizen of Granger, Indiana.  From April 2014 until July 2015, Hills was an employee of AT&T Mobility, working at its retail store at 2707 Cassopolis Street in Elkhart, Indiana.

5. AT&T Mobility is a limited liability corporation organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia.  AT&T Mobility is a wholly-owned subsidiary of AT&T.  On information and belief, at all relevant times, AT&T Mobility was engaged in commerce or an industry affecting commerce within the meaning of the FMLA,

employed in excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of the FMLA, Title VII, and ADA.

6. AT&T Services is a shared services company incorporated under the laws of Delaware, with its principal place of business in Dallas, Texas. AT&T Services is a subsidiary of AT&T. On information and belief, at all relevant times, AT&T Services was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of the FMLA, Title VII, and the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On May 9, 2016, Hills filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that AT&T engaged in sex and disability discrimination and retaliation, all in violation of Title VII and the ADA. While that charge was pending, she filed a complaint on July 14, 2017 alleging violations of the FMLA, so as to prevent the statute of limitations from expiring on that claim. She then received her Notice of Right to Sue from the EEOC on May 8, 2018. On May 14, 2018, she sought leave to file a timely amendment to her complaint that included the exhausted claims, pursuant to the Court's April 23, 2018 Order. Now, pursuant to this Court's December 4, 2018 Memorandum and Order, she submits this Second Amended Complaint.

## FACTS GIVING RISE TO THIS ACTION

8. AT&T hired Hills in April 2014 as a Sales Support Representative. In that position, she provided clerical support to the store's managers and Sales Representatives.

9. Hills performed well in the job and, within roughly four months of her hire, was promoted to Sales Representative, a progression that typically took at least twice that long.

3

10.     As a Sales Representative, Hills was responsible for selling cellphones and tablets, as well as various phone and data plans to customers.  Throughout her employment with AT&T, Hills performed well and routinely ranked above average in sales performance for her store and area.  She was the only female Sales Representative at the store, which employed between five and six Sales Representatives during most of Hills's tenure there.

11.     Throughout Hills's employment, AT&T maintained a Sales Attendance Guidelines policy pursuant to which unexcused absences, late arrivals, or early departures would lead to eventual discipline and ultimately termination.

12.     After Hills became pregnant in October 2014, her Store Manager Dion McGlown ("McGlown") and Assistant Manager Greg Roberts ("Roberts") routinely refused to excuse Hills when she arrived late or was absent because of her pregnancy or pregnancy-related conditions.

13.     During Hills's pregnancy, she experienced severe nausea during the night and in the morning, which impeded her ability to sleep and to work.  As a result, she occasionally was late or absent from work.

14.     Defendants knew that these attendance issues were due to her pregnancy because Hills reported her pregnancy to Defendants.

15.     Defendants nonetheless did not excuse these absences, which served as the basis for Hills's eventual termination.  They made no effort to raise with Hills potential accommodations, such as excused absences, a revised schedule, or a later arrival time.

16.     In contrast, Hills's non-pregnant colleagues' absences, tardiness, and early departures were excused.  For example, non-pregnant employees arrived late for the start of their shifts, left work for extended periods to coach youth soccer, left work for extended periods to drive family members to various obligations, or returned late to work from lunch breaks, without

4

consequence. Upon information and belief, for instance, Sales Representative Mike Paradine ("Paradine") was not penalized for absences related to his chronic back pain. Hills's then-boyfriend and now husband, Nathan Hills, who was also a Representative at the store, repeatedly had late arrivals or absences excused.

17. Hills's managers showed hostility to her pregnancy in other ways. Throughout her pregnancy, McGlown repeatedly stated his belief that Hills would not return to work after her maternity leave. On multiple occasions, he told her that "women don't come back to work after giving birth," or words to that effect, and referred negatively to other women he had supervised who had not returned from maternity leave.

18. McGlown also resisted Hills's efforts to learn about the kinds of leave available to her under AT&T's policies and pressured her not to take the full twelve weeks of leave to which she would be entitled under the FMLA after the birth of her child.

19. On one occasion, when Hills asked about the possibility of working a part-time schedule after having her baby, McGlown told her he would permit her to do so only if she agreed to take just four weeks of maternity leave. Later, during Hills's leave, McGlown called her at home to pressure her about her anticipated return date.

20. Additionally, both before and during Hills's pregnancy, she was subjected to harassment by Paradine. Paradine regularly commented about Hills's body, his opinion of her attractiveness, and her sexual relationship with Nathan Hills. Paradine routinely made these comments in front of co-workers and in front of store managers, but neither McGlown nor Roberts took any action. Hills also frequently reported Paradine's statements to McGlown and sought his intervention, but he did nothing.

21. After Hills became pregnant in October 2014, Paradine's comments increased in frequency. He also began to reference changes in Hills's body as a result of her pregnancy. Distressed, in or around January 2015, Hills implored McGlown to take action, and he advised her to file a formal complaint with AT&T's Human Resources Department, which she did. On information and belief, AT&T conducted an investigation that included interviewing only McGlown, Hills, and Paradine.

22. AT&T did not inform Hills of the outcome of its investigation. Paradine had boasted on prior occasions that he had received a "final warning" (for having called another Sales Representative a "dick"), but he remained employed by AT&T after the investigation of his harassment of Hills. Although his sexual comments abated, he continued to comment negatively about Hills's pregnancy for the remainder of Hills's employment by AT&T. (On information and belief, AT&T later fired Paradine for mishandling cash transactions.)

23. After lodging her harassment complaint, Hills continued to experience a double standard with respect to having absences excused.

24. Between January and April 2015, Hills's pregnancy became increasingly difficult. In addition to continuing to suffer from severe nausea, in January she began experiencing back and pelvic pain—as the pregnancy aggravated her previously-diagnosed scoliosis—prompting her doctor to refer her for physical therapy.

25. Consequently, in that four-month period, Hills was absent once and late on two occasions.

26. Rather than excuse these few infractions or raise with Hills the possibility of altering her schedule or otherwise accommodating her, Defendants denied her excused absences, putting her close to the threshold for attendance-based termination.

27. Notably, as of April 7, 2015, Hills had worked full-time for Respondent for one year, qualifying her for leave, including intermittent leave, under the FMLA.

28. As Hills's symptoms worsened during April—including experiencing pelvic pain while walking and regular contractions at the end of each day—she sought a temporary transfer into the Sales Support Representative position she previously held, which was vacant at the time and was less taxing than her Sales Representative job. McGlown denied this request for accommodation and instead installed a non-pregnant female employee with shorter tenure than Hills.

29. Hills also was denied permission to postpone her attendance at a training session taking place hours away from Elkhart, a trip that she knew would be difficult due to chronic nausea, dizziness, and fatigue related to her pregnancy, while another colleague was permitted to forgo off-site training due to family obligations.

30. In May 2015, Hills was diagnosed with a condition of the liver called cholestasis, a disorder that causes bile buildup and results in intense itching. The condition also is dangerous to the developing fetus and typically warrants prescription of steroids and early delivery at roughly 37-38 weeks (rather than the usual 39-40 weeks). As a physiological disorder involving one or more body systems, cholestasis qualifies as a "disability."

31. The condition exacerbated Hills' physical debilitation during the final month of her pregnancy. Because the itchiness was especially extreme at night, she was unable to sleep, magnifying her fatigue. And with her fatigue came dizziness, which prompted more nausea.

32. Despite AT&T's awareness that Hills had been diagnosed with cholestasis, it took no steps to initiate discussions with her about potentially excusing those absences. While Defendants made provisions to accommodate the impairments that affected other employees,

7

they made no provision to accommodate her. Nor did AT&T explain, in writing or otherwise, that it considered pregnancy, childbirth, or related medical conditions to be grounds for an excused absence under its attendance policy or how to access excused absences for those conditions.

33. On May 26, 2015, Hills's doctor directed her to start her maternity leave, and less than a week after that, she delivered her baby, on June 1, 2015.

34. Hills returned to work on July 13, 2015.

35. On July 16, 2015, however, McGlown informed Hills that AT&T had refused to excuse two of her absences during May—thereby putting her over the permissible limit—and therefore had decided to fire her. McGlown claimed to have advocated for her with his manager, but to have been overruled.

36. AT&T relied on the bias exhibited by Hills's managers, as described throughout this Second Amended Complaint, when it decided to terminate Hills for unexcused absences.

37. During the roughly fifteen months Hills was employed by AT&T, none of her non-pregnant colleagues were fired for unexcused absences.

**FIRST CAUSE OF ACTION**
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**
**Disparate Treatment Because of Sex (Pregnancy)**

38. Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

39. AT&T's actions constitute disparate treatment against Hills because of sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

40. AT&T subjected Hills to anti-pregnancy bias through the statements and actions of Hills's managers, on which the Company relied when meting out discipline and ultimate termination.

41. AT&T also discriminated against Hills by refusing to accommodate her pregnancy when it declined to excuse her absences for to pregnancy and/or related medical conditions while granting such excuses to similarly-situated individuals absent for other reasons.

42. AT&T further discriminated against Hills by denying her accommodations for her pregnancy and/or related medical conditions.

43. Finally, AT&T fired Hills due to her pregnancy, pregnancy-related conditions, and related medical needs.

44. AT&T's failure to accommodate Hills's pregnancy and/or related medical conditions imposed a significant burden on Hills, and any reason for such failure is not sufficiently strong to justify that burden.

45. As a result of AT&T's unlawful sex discrimination, Hills has suffered significant monetary loss, including lost earnings and other benefits.

46. As a result of AT&T's unlawful sex discrimination, Hills has endured emotional pain, suffering, and other nonpecuniary losses.

47. AT&T's unlawful sex discrimination was taken either with malice or with reckless indifference to Hills's rights under the law.

## SECOND CAUSE OF ACTION
### Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)
### Disparate Treatment Because of Sex (Harassment)

48. Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

49. AT&T discriminated against Hills on the basis of sex by failing to remedy harassment of which it knew or should have known, in violation of Title VII of the Civil Rights Act of 1964.

50. As a result of AT&T's unlawful sex discrimination, Hills has endured emotional pain, suffering, and other nonpecuniary losses.

51. AT&T's unlawful sex discrimination was taken either with malice or with reckless indifference to Hills's rights under the law.

### THIRD CAUSE OF ACTION
### Title I of the ADA, 42 U.S.C. §§ 12112(a), (b); 29 C.F.R. §§ 1630.2(o), 1630.4, 1630.9
### Failure to Provide a Reasonable Accommodation

52. Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

53. AT&T discriminated against Hills, an otherwise qualified individual with a disability, for her known disability of cholestasis, by failing to provide her with a reasonable accommodation, where such an accommodation was available and did not pose an undue hardship, in violation of the Americans with Disabilities Act.

54. AT&T failed to engage in an interactive process with Hills to identify the limitations resulting from her disability and potential accommodations that could overcome those limitations.

55. As a result of AT&T's unlawful disability discrimination, Hills has suffered significant monetary loss, including lost earnings and other benefits.

56. As a result of AT&T's unlawful disability discrimination, Hills has endured emotional pain, suffering, and other nonpecuniary losses.

57. AT&T's unlawful disability discrimination was taken either with malice or with reckless indifference to Hills's rights under the law.

## FOURTH CAUSE OF ACTION
**Interference in Violation of the FMLA, 29 U.S.C. §§ 2601 *et seq*.**

58. Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

59. As of mid-April 2015, Hills was an "eligible employee" within the meaning of the FMLA.

60. At all times relevant herein, AT&T was and is a "covered employer" within the meaning of the FMLA.

61. AT&T violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Hills's FMLA rights by, *inter alia*, failing to notify her of her eligibility for FMLA leave, including intermittent leave.

62. As a direct and proximate result of AT&T's unlawful conduct in violation of the FMLA, Hills has suffered harm for which she is entitled to an award of damages.

63. AT&T's unlawful actions constitute bad faith and were malicious, willful, and wanton violations of the FMLA for which Hills is entitled to an award of liquidated damages.

## FIFTH CAUSE OF ACTION
**Retaliation in Violation of the FMLA, 29 U.S.C. §§ 2601 *et seq*.**

64. Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

65. As of mid-April 2015, Hills was an "eligible employee" within the meaning of the FMLA.

66. At all times relevant herein, AT&T was and is a "covered employer" within the meaning of the FMLA.

67. AT&T violated the FMLA by unlawfully retaliating against Hills for exercising her FMLA rights by, *inter alia*, refusing to credit her qualifying absences as intermittent leave and instead penalizing her with unexcused absences, resulting in her discharge.

68. As a direct and proximate result of AT&T's unlawful conduct in violation of the FMLA, Hills has suffered harm for which she is entitled to an award of damages.

69. AT&T's unlawful actions constitute bad faith and were malicious, willful, and wanton violations of the FMLA for which Hills is entitled to an award of liquidated damages.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Hills respectfully requests that the Court grant the following relief:

A. Declaratory relief, including but not limited to a declaration that AT&T violated Title VII, the ADA, and the FMLA;

B. Injunctive relief appropriate to the proof at trial;

C. Compensation for loss of income;

D. Compensatory and consequential damages, including for emotional distress;

E. Punitive damages;

F. Liquidated damages,

G. Pre-judgment and post-judgment interest at the highest lawful rate;

H. Costs incurred, including reasonable attorneys' fees to the extent allowable by law; and

I. Such other relief as the Court deems just and proper.

## JURY DEMAND

Hills demands a jury trial on the matters alleged herein.

Dated: December 11, 2018        Respectfully submitted,

/s/Kalpana Kotagal
Joseph M. Sellers*
Kalpana Kotagal*
Miriam R. Nemeth*
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
mnemeth@cohenmilstein.com

Gillian L. Thomas*
Lenora M. Lapidus**
American Civil Liberties Union
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
llapidus@aclu.org
gthomas@aclu.org

Lynn A. Toops (#26386-49)
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
*Attorneys for Plaintiff Katia Hills*

**pro hac vice* admission pending
*admitted *pro hac vice*

13

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2018, a copy of the foregoing *Second Amended Complaint* was filed electronically. Notice of this filing will be sent by operation of the Court's Electronic Filing system to the following parties of record:

Kenneth W. Gage
Alison M. Lewandoski
Brian M. Hayes
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-318-6000
kennethgage@paulhastings.com
alisonlewandoski@paulhastings.com
brianhayes@paulhastings.com

Alex J. Maturi
Paul Hastings LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312-499-6076
alexmaturi@paulhastings.com

*Attorneys for Defendants*

        */s/Kalpana Kotagal*
        Kalpana Kotagal
        Attorney for Plaintiff