IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

KATIA HILLS,

          Plaintiff,

   -against-

AT&T MOBILITY SERVICES LLC a/k/a
AT&T MOBILITY LLC and AT&T
SERVICES, INC.,

          Defendants.

Civil No.: 3:17-cv-00556-JD-MGG

## DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT

Defendants AT&T MOBILITY SERVICES LLC and AT&T SERVICES, INC.

(hereinafter "AT&T" or "Defendants"), by and through their undersigned counsel, hereby submit

this Answer to Katia Hills's ("Plaintiff's") Second Amended Complaint (the "Complaint").

Responding to the specific headings and numbered paragraphs of the Complaint, and

using the same numbers that appear therein, Defendants answer each as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3)
and 28 U.S.C. § 1331.

**ANSWER:**    **Defendants admit the allegations in Paragraph 1 of the Complaint.**

2.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**    **Defendants admit that 28 U.S.C. §§ 2201 and 2202 authorize
declaratory relief under certain circumstances. Except as herein expressly admitted,
Defendants deny, generally and specifically, each and every remaining allegation contained
in Paragraph 2 of the Complaint.**

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3). AT&T does not contest that venue is proper in this forum for Hills's claims. See AT&T's Resp. to Cond. Mot. to Transfer, Dkt. 53, at 1, 10.

**ANSWER:    Defendants admit the allegations in Paragraph 3 of the Complaint.**

## PARTIES

4.      Plaintiff Katia Hills is a woman and a resident and citizen of Granger, Indiana. From April 2014 until July 2015, Hills was an employee of AT&T Mobility, working at its retail store at 2707 Cassopolis Street in Elkhart, Indiana.

**ANSWER:    Defendants admit the allegations in Paragraph 4 of the Complaint.**

5.      AT&T Mobility is a limited liability corporation organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia. AT&T Mobility is a wholly-owned subsidiary of AT&T. On information and belief, at all relevant times, AT&T Mobility was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of the FMLA, Title VII, and ADA.

**ANSWER:    Defendants admit that AT&T Mobility Services LLC ("AT&T Mobility") is a limited liability corporation organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia. Defendants admit that, at all relevant times, AT&T Mobility was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of the FMLA, Title VII, and the ADA. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 5 of the Complaint.**

6.      AT&T Services is a shared services company incorporated under the laws of Delaware, with its principal place of business in Dallas, Texas. AT&T Services is a subsidiary of AT&T. On information and belief, at all relevant times, AT&T Services was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in

excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of the FMLA, Title VII, and the ADA.

**ANSWER:    Defendants admit that AT&T Services, Inc. ("AT&T Services") is a corporation organized under the laws of Delaware, with its principal place of business in Dallas, Texas. Defendants admit that, at all relevant times, AT&T Services was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in excess of 50 employees (but not Plaintiff) during each of 20 or more calendar workweeks, and was an "employer" (but not Plaintiff's employer) within the meaning of the FMLA, Title VII, and the ADA. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 6 of the Complaint.**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      On May 9, 2016, Hills filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that AT&T engaged in sex and disability discrimination and retaliation, all in violation of Title VII and the ADA. While that charge was pending, she filed a complaint on July 14, 2017 alleging violations of the FMLA, so as to prevent the statute of limitations from expiring on that claim. She then received her Notice of Right to Sue from the EEOC on May 8, 2018. On May 14, 2018, she sought leave to file a timely amendment to her complaint that included the exhausted claims, pursuant to the Court's April 23, 2018 Order. Now, pursuant to this Court's December 4, 2018 Memorandum and Order, she submits this Second Amended Complaint.

**ANSWER:    Defendants admit that on May 9, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that AT&T engaged in sex and disability discrimination and retaliation in violation of Title VII and the ADA. Defendants admit that while that charge was pending, Plaintiff filed on July 14, 2017 a complaint alleging violations of the FMLA. Defendants admit, on information and belief, that Plaintiff received a Notice of Right to Sue from the EEOC on**

**May 8, 2018. Defendants admit that on May 14, 2018, Plaintiff sought leave to file an amended complaint that included claims under Title VII and the ADA, pursuant to the Court's April 23, 2018 Order. Defendants admit that Plaintiff filed on December 11, 2018 the operative Second Amended Complaint. Defendants lack knowledge and information sufficient to form a belief as to Plaintiff's motivation with respect to her filings in this Court. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 7 of the Complaint.**

## FACTS GIVING RISE TO THIS ACTION

8.      AT&T hired Hills in April 2014 as a Sales Support Representative. In that position, she provided clerical support to the store's managers and Sales Representatives.

**ANSWER:      Defendants admit that AT&T Mobility hired Plaintiff as a Sales Support Representative, effective April 2014. Defendants admit that as a Sales Support Representative, among other duties, Plaintiff provided clerical support to the store's managers and Sales Representatives. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 8 of the Complaint.**

9.      Hills performed well in the job and, within roughly four months of her hire, was promoted to Sales Representative, a progression that typically took at least twice that long.

**ANSWER:      Defendants admit that AT&T Mobility promoted Plaintiff to Sales Representative a/k/a Retail Sales Consultant. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 9 of the Complaint.**

10.     As a Sales Representative, Hills was responsible for selling cellphones and tablets, as well as various phone and data plans to customers. Throughout her employment with AT&T, Hills performed well and routinely ranked above average in sales performance for her store and area. She was the only female Sales Representative at the store, which employed between five and six Sales Representatives during most of Hills's tenure there.

**ANSWER:     Defendants admit that as a Sales Representative, Plaintiff was responsible for selling to customers cellphones and tablets, as well as various phone and data plans. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 10 of the Complaint.**

11.     Throughout Hills's employment, AT&T maintained a Sales Attendance Guidelines policy pursuant to which unexcused absences, late arrivals, or early departures would lead to eventual discipline and ultimately termination.

**ANSWER:     Defendants admit that throughout Plaintiff's employment, AT&T Mobility maintained Sales Attendance Guidance, which was revised during the course of Plaintiff's employment. Defendants admit that, pursuant to each iteration of the AT&T Mobility Sales Attendance Guidance in effect during Plaintiff's employment, a sufficient number of unexcused absences, unexcused late arrivals, and unexcused early departures could lead to eventual discipline and termination, at the discretion of AT&T Mobility employees. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 11 of the Complaint.**

12.     After Hills became pregnant in October 2014, her Store Manager Dion McGlown ("McGlown") and Assistant Manager Greg Roberts ("Roberts") routinely refused to excuse Hills when she arrived late or was absent because of her pregnancy or pregnancy-related conditions.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 12 of the Complaint.**

13. During Hills's pregnancy, she experienced severe nausea during the night and in the morning, which impeded her ability to sleep and to work. As a result, she occasionally was late or absent from work.

**ANSWER:** **Defendants admit that Plaintiff was occasionally late or absent from work. Defendants admit that during her pregnancy, according to documentation provided by Plaintiff, she complained to her medical provider that she was experiencing nausea and difficulty sleeping at night. Defendants lack knowledge or information sufficient to form a belief as to whether nausea or difficulty sleeping at night impeded Plaintiff's ability to sleep or work or were causally connected to her tardiness or absences from work. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 13 of the Complaint.**

14. Defendants knew that these attendance issues were due to her pregnancy because Hills reported her pregnancy to Defendants.

**ANSWER:** **Defendants admit that Plaintiff reported her pregnancy to employees of AT&T Mobility. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 14 of the Complaint.**

15. Defendants nonetheless did not excuse these absences, which served as the basis for Hills's eventual termination. They made no effort to raise with Hills potential accommodations, such as excused absences, a revised schedule, or a later arrival time.

**ANSWER:** **Defendants admit that Plaintiff's eventual termination was the result of unexcused absences. Except as herein expressly admitted, Defendants deny, generally**

and specifically, each and every remaining allegation contained in Paragraph 15 of the

Complaint.

16.    In contrast, Hills's non-pregnant colleagues' absences, tardiness, and early departures were excused. For example, non-pregnant employees arrived late for the start of their shifts, left work for extended periods to coach youth soccer, left work for extended periods to drive family members to various obligations, or returned late to work from lunch breaks, without consequence. Upon information and belief, for instance, Sales Representative Mike Paradine ("Paradine") was not penalized for absences related to his chronic back pain. Hills's then-boyfriend and now husband, Nathan Hills, who was also a Representative at the store, repeatedly had late arrivals or absences excused.

ANSWER:    Defendants admit that Nathan Hills and Mike Paradine were

sometimes absent for reasons that qualified for an excused absence, and that on those

occasions their absences were excused. Except as herein expressly admitted, Defendants

deny, generally and specifically, each and every remaining allegation contained in

Paragraph 16 of the Complaint.

17.    Hills's managers showed hostility to her pregnancy in other ways. Throughout her pregnancy, McGlown repeatedly stated his belief that Hills would not return to work after her maternity leave. On multiple occasions, he told her that "women don't come back to work after giving birth," or words to that effect, and referred negatively to other women he had supervised who had not returned from maternity leave.

ANSWER:    Defendants deny each and every allegation in Paragraph 17 of the

Complaint.

18.    McGlown also resisted Hills's efforts to learn about the kinds of leave available to her under AT&T's policies and pressured her not to take the full twelve weeks of leave to which she would be entitled under the FMLA after the birth of her child.

ANSWER:    Defendants deny each and every allegation in Paragraph 18 of the

Complaint.

19.     On one occasion, when Hills asked about the possibility of working a part-time schedule after having her baby, McGlown told her he would permit her to do so only if she agreed to take just four weeks of maternity leave. Later, during Hills's leave, McGlown called her at home to pressure her about her anticipated return date.

**ANSWER:     Defendants admit that Hills asked about the possibility of working a part-time schedule after giving birth. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 19 of the Complaint.**

20.     Additionally, both before and during Hills's pregnancy, she was subjected to harassment by Paradine. Paradine regularly commented about Hills's body, his opinion of her attractiveness, and her sexual relationship with Nathan Hills. Paradine routinely made these comments in front of co-workers and in front of store managers, but neither McGlown nor Roberts took any action. Hills also frequently reported Paradine's statements to McGlown and sought his intervention, but he did nothing.

**ANSWER:     Defendants deny each and every allegation in Paragraph 20 of the Complaint.**

21.     After Hills became pregnant in October 2014, Paradine's comments increased in frequency. He also began to reference changes in Hills's body as a result of her pregnancy. Distressed, in or around January 2015, Hills implored McGlown to take action, and he advised her to file a formal complaint with AT&T's Human Resources Department, which she did. On information and belief, AT&T conducted an investigation that included interviewing only McGlown, Hills, and Paradine.

**ANSWER:     Defendants admit that AT&T conducted an investigation into a complaint by Plaintiff about Michael Paradine, and that the investigation involved interviewing McGlown, Plaintiff, and Paradine. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 21 of the Complaint.**

22.     AT&T did not inform Hills of the outcome of its investigation. Paradine had boasted on prior occasions that he had received a "final warning" (for having called another

Sales Representative a "dick"), but he remained employed by AT&T after the investigation of his harassment of Hills. Although his sexual comments abated, he continued to comment negatively about Hills's pregnancy for the remainder of Hills's employment by AT&T. (On information and belief, AT&T later fired Paradine for mishandling cash transactions.)

**ANSWER:     Defendants admit that Paradine remained employed by AT&T Mobility after the investigation into Plaintiff's complaint, and that AT&T Mobility later terminated Paradine's employment. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 22 of the Complaint.**

23.     After lodging her harassment complaint, Hills continued to experience a double standard with respect to having absences excused.

**ANSWER:     Defendants deny each and every allegation in Paragraph 23 of the Complaint.**

24.     Between January and April 2015, Hills's pregnancy became increasingly difficult. In addition to continuing to suffer from severe nausea, in January she began experiencing back and pelvic pain—as the pregnancy aggravated her previously-diagnosed scoliosis—prompting her doctor to refer her for physical therapy.

**ANSWER:     Defendants admit that between January and April 2015, according to documentation provided by Plaintiff, she complained to her medical provider that she was experiencing nausea, back pain, and pelvic pain, and was referred by her medical provider to physical therapy in connection with scoliosis and back pain. Defendants lack knowledge and information sufficient to form a belief about the remaining allegations in Paragraph 24 of the Complaint.**

25.     Consequently, in that four-month period, Hills was absent once and late on two occasions.

**ANSWER:     Defendants admit that Plaintiff was absent several times between January 2015 and April 2015. Defendants lack knowledge and information sufficient to form a belief as to the reason for those absences. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 25 of the Complaint.**

26.     Rather than excuse these few infractions or raise with Hills the possibility of altering her schedule or otherwise accommodating her, Defendants denied her excused absences, putting her close to the threshold for attendance-based termination.

**ANSWER:     Defendants admit that Plaintiff's unexcused absences between January 2015 and April 2015 put her close to the threshold for possible attendance-based termination. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 26 of the Complaint.**

27.     Notably, as of April 7, 2015, Hills had worked full-time for Respondent for one year, qualifying her for leave, including intermittent leave, under the FMLA.

**ANSWER:     Defendants admit that as of April 7, 2015, Plaintiff had worked full-time for AT&T Mobility for one year and was an eligible employee under the FMLA. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 27 of the Complaint.**

28.     As Hills's symptoms worsened during April—including experiencing pelvic pain while walking and regular contractions at the end of each day—she sought a temporary transfer into the Sales Support Representative position she previously held, which was vacant at the time and was less taxing than her Sales Representative job. McGlown denied this request for accommodation and instead installed a non-pregnant female employee with shorter tenure than Hills.

**ANSWER:** **Defendants admit that in April 2015, according to documentation provided by Plaintiff, she complained to her medical provider that she was experiencing pelvic pain while walking. Defendants lack knowledge and information sufficient to form a belief as to whether Plaintiff was experiencing regular contractions during the day and whether her symptoms worsened in April 2015. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 28 of the Complaint.**

29.     Hills also was denied permission to postpone her attendance at a training session taking place hours away from Elkhart, a trip that she knew would be difficult due to chronic nausea, dizziness, and fatigue related to her pregnancy, while another colleague was permitted to forgo off-site training due to family obligations.

**ANSWER:** **Defendants admit that Plaintiff was denied permission to postpone her attendance at a mandatory offsite training session. Defendants deny that Plaintiff identified any reason for her request other than a scheduling conflict regarding a car that she shared with her then-boyfriend. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 29 of the Complaint.**

30.     In May 2015, Hills was diagnosed with a condition of the liver called cholestasis, a disorder that causes bile buildup and results in intense itching. The condition also is dangerous to the developing fetus and typically warrants prescription of steroids and early delivery at roughly 37-38 weeks (rather than the usual 39-40 weeks). As a physiological disorder involving one or more body systems, cholestasis qualifies as a "disability."

**ANSWER:** **Defendants admit that in May 2015, Plaintiff was diagnosed with a condition of the liver called cholestasis, which can be caused, among other things, by a disorder of the liver or bile duct. Defendants admit that cholestasis involves bile buildup and intense itching. Defendants admit that cholestasis can be dangerous to the developing**

fetus, may warrant the prescription of steroids, and may warrant early delivery. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 30 of the Complaint.

31.     The condition exacerbated Hills' physical debilitation during the final month of her pregnancy. Because the itchiness was especially extreme at night, she was unable to sleep, magnifying her fatigue.  And with her fatigue came dizziness, which prompted more nausea.

**ANSWER:     Defendants lack knowledge and information sufficient to form a belief as to each and every allegation in Paragraph 31 of the Complaint.**

32.     Despite AT&T's awareness that Hills had been diagnosed with cholestasis, it took no steps to initiate discussions with her about potentially excusing those absences. While Defendants made provisions to accommodate the impairments that affected other employees, they made no provision to accommodate her. Nor did AT&T explain, in writing or otherwise, that it considered pregnancy, childbirth, or related medical conditions to be grounds for an excused absence under its attendance policy or how to access excused absences for those conditions.

**ANSWER:     Defendants admit that they each made provisions to accommodate employees with impairments. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 32 of the Complaint.**

33.     On May 26, 2015, Hills's doctor directed her to start her maternity leave, and less than a week after that, she delivered her baby, on June 1, 2015.

**ANSWER:     Defendants admit that Plaintiff's doctor certified that she should be off work starting May 26, 2015 due to cholestasis. On information and belief, Defendants admit that Plaintiff delivered her baby on June 1, 2015. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 33 of the Complaint.**

34.     Hills returned to work on July 13, 2015.

**ANSWER:     Defendants admit the allegations in Paragraph 34 of the Complaint.**

35.     On July 16, 2015, however, McGlown informed Hills that AT&T had refused to excuse two of her absences during May—thereby putting her over the permissible limit—and therefore had decided to fire her. McGlown claimed to have advocated for her with his manager, but to have been overruled.

**ANSWER:     Defendants admit that on July 16, 2015, McGlown informed Hills that AT&T Mobility was terminating her employment for unexcused absences in excess of the permissible limit. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 35 of the Complaint.**

36.     AT&T relied on the bias exhibited by Hills's managers, as described throughout this Second Amended Complaint, when it decided to terminate Hills for unexcused absences.

**ANSWER:     Defendants deny each and every allegation in Paragraph 36 of the Complaint.**

37.     During the roughly fifteen months Hills was employed by AT&T, none of her non-pregnant colleagues were fired for unexcused absences.

**ANSWER:     Defendants admit that during the timeframe that Plaintiff was employed by AT&T Mobility, none of the employees who worked at the same store as Plaintiff were terminated for unexcused absences. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 37 of the Complaint.**

## FIRST CAUSE OF ACTION
### Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)
### Disparate Treatment Because of Sex (Pregnancy)

38.     Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

**ANSWER:     Defendants restate and incorporate by reference, as if fully set forth herein, each and every response in this Answer.**

39.     AT&T's actions constitute disparate treatment against Hills because of sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

**ANSWER:     Defendants deny each and every allegation in Paragraph 39 of the Complaint.**

40.     AT&T subjected Hills to anti-pregnancy bias through the statements and actions of Hills's managers, on which the Company relied when meting out discipline and ultimate termination.

**ANSWER:     Defendants deny each and every allegation in Paragraph 40 of the Complaint.**

41.     AT&T also discriminated against Hills by refusing to accommodate her pregnancy when it declined to excuse her absences for to pregnancy and/or related medical conditions while granting such excuses to similarly-situated individuals absent for other reasons.

**ANSWER:     Defendants deny each and every allegation in Paragraph 41 of the Complaint.**

42.     AT&T further discriminated against Hills by denying her accommodations for her pregnancy and/or related medical conditions.

**ANSWER:     Defendants deny each and every allegation in Paragraph 42 of the Complaint.**

43.     Finally, AT&T fired Hills due to her pregnancy, pregnancy-related conditions, and related medical needs.

**ANSWER:     Defendants deny each and every allegation in Paragraph 43 of the Complaint.**

44.     AT&T's failure to accommodate Hills's pregnancy and/or related medical conditions imposed a significant burden on Hills, and any reason for such failure is not sufficiently strong to justify that burden.

**ANSWER:     Defendants deny each and every allegation in Paragraph 44 of the Complaint.**

45.     As a result of AT&T's unlawful sex discrimination, Hills has suffered significant monetary loss, including lost earnings and other benefits.

**ANSWER:     Defendants deny each and every allegation in Paragraph 45 of the Complaint.**

46.     As a result of AT&T's unlawful sex discrimination, Hills has endured emotional pain, suffering, and other nonpecuniary losses.

**ANSWER:     Defendants deny each and every allegation in Paragraph 46 of the Complaint.**

47.     AT&T's unlawful sex discrimination was taken either with malice or with reckless indifference to Hills's rights under the law.

**ANSWER:     Defendants deny each and every allegation in Paragraph 47 of the Complaint.**

<u>**SECOND CAUSE OF ACTION**</u>
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**
**Disparate Treatment Because of Sex (Harassment)**

48.     Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

**ANSWER:** **Defendants restate and incorporate by reference, as if fully set forth herein, each and every response in this Answer.**

49.     AT&T discriminated against Hills on the basis of sex by failing to remedy harassment of which it knew or should have known, in violation of Title VII of the Civil Rights Act of 1964.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 49 of the Complaint.**

50.     As a result of AT&T's unlawful sex discrimination, Hills has endured emotional pain, suffering, and other nonpecuniary losses.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 50 of the Complaint.**

51.     AT&T's unlawful sex discrimination was taken either with malice or with reckless indifference to Hills's rights under the law.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 51 of the Complaint.**

## THIRD CAUSE OF ACTION
### Title I of the ADA, 42 U.S.C. §§ 12112(a), (b);
### 29 C.F.R. §§ 1630.2(o), 1630.4, 1630.9
### Failure to Provide a Reasonable Accommodation

52.     Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

**ANSWER:** **Defendants restate and incorporate by reference, as if fully set forth herein, each and every response in this Answer.**

53.     AT&T discriminated against Hills, an otherwise qualified individual with a disability, for her known disability of cholestasis, by failing to provide her with a reasonable accommodation, where such an accommodation was available and did not pose an undue hardship, in violation of the Americans with Disabilities Act.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 53 of the Complaint.**

54.     AT&T failed to engage in an interactive process with Hills to identify the limitations resulting from her disability and potential accommodations that could overcome those limitations.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 54 of the Complaint.**

55.     As a result of AT&T's unlawful disability discrimination, Hills has suffered significant monetary loss, including lost earnings and other benefits.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 55 of the Complaint.**

56.     As a result of AT&T's unlawful disability discrimination, Hills has endured emotional pain, suffering, and other nonpecuniary losses.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 56 of the Complaint.**

57.     AT&T's unlawful disability discrimination was taken either with malice or with reckless indifference to Hills's rights under the law.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 57 of the Complaint.**

## FOURTH CAUSE OF ACTION
### Interference in Violation of the FMLA, 29 U.S.C. §§ 2601 *et seq*.

58.     Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

**ANSWER:** **Defendants restate and incorporate by reference, as if fully set forth herein, each and every response in this Answer.**

59.     As of mid-April 2015, Hills was an "eligible employee" within the meaning of the FMLA.

**ANSWER:    Defendants admit the allegations in Paragraph 59 of the Complaint.**

60.     At all times relevant herein, AT&T was and is a "covered employer" within the meaning of the FMLA.

**ANSWER:    Defendants admit that at all times relevant herein, AT&T Mobility was a "covered employer" under the FMLA, and that AT&T Mobility is a "covered employer" under the FMLA as of the date on which this Answer is filed. Defendants admit that at all times relevant herein, AT&T Services was a "covered employer" under the FMLA (but not Plaintiff's employer), and that AT&T Services is a "covered employer" under the FMLA as of the date on which this Answer is filed. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 60 of the Complaint.**

61.     AT&T violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Hills's FMLA rights by, *inter alia*, failing to notify her of her eligibility for FMLA leave, including intermittent leave.

**ANSWER:    Defendants deny each and every allegation in Paragraph 61 of the Complaint.**

62.     As a direct and proximate result of AT&T's unlawful conduct in violation of the FMLA, Hills has suffered harm for which she is entitled to an award of damages.

**ANSWER:    Defendants deny each and every allegation in Paragraph 62 of the Complaint.**

63.     AT&T's unlawful actions constitute bad faith and were malicious, willful, and wanton violations of the FMLA for which Hills is entitled to an award of liquidated damages.

**ANSWER:     Defendants deny each and every allegation in Paragraph 63 of the Complaint.**

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of the FMLA, 29 U.S.C. §§ 2601 *et seq*.**

64.     Hills realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

**ANSWER:     Defendants restate and incorporate by reference, as if fully set forth herein, each and every response in this Answer.**

65.     As of mid-April 2015, Hills was an "eligible employee" within the meaning of the FMLA.

**ANSWER:     Defendants admit the allegations in Paragraph 65 of the Complaint.**

66.     At all times relevant herein, AT&T was and is a "covered employer" within the meaning of the FMLA.

**ANSWER:     Defendants admit that at all times relevant herein, AT&T Mobility was a "covered employer" under the FMLA, and that AT&T Mobility is a "covered employer" under the FMLA as of the date on which this Answer is filed. Defendants admit that at all times relevant herein, AT&T Services was a "covered employer" (but not Plaintiff's employer) under the FMLA, and that AT&T Services is a "covered employer" under the FMLA as of the date on which this Answer is filed. Except as herein expressly admitted, Defendants deny, generally and specifically, each and every remaining allegation contained in Paragraph 66 of the Complaint.**

67.     AT&T violated the FMLA by unlawfully retaliating against Hills for exercising her FMLA rights by, *inter alia*, refusing to credit her qualifying absences as intermittent leave and instead penalizing her with unexcused absences, resulting in her discharge.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 67 of the Complaint.**

68.     As a direct and proximate result of AT&T's unlawful conduct in violation of the FMLA, Hills has suffered harm for which she is entitled to an award of damages.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 68 of the Complaint.**

69.     AT&T's unlawful actions constitute bad faith and were malicious, willful, and wanton violations of the FMLA for which Hills is entitled to an award of liquidated damages.

**ANSWER:** **Defendants deny each and every allegation in Paragraph 69 of the Complaint.**

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's claims for damages are barred or reduced to the extent that she failed to properly mitigate her alleged damages.

### SECOND DEFENSE

Plaintiff's claims for punitive damages are barred because Defendants engaged in good faith efforts to comply with the law.

### THIRD DEFENSE

Plaintiff's claims are barred in whole or in part because Defendants had an honest, good-faith belief that all decisions with respect to Plaintiff were made solely for legitimate, business-related reasons and were reasonably based upon the facts as Defendants understood them.

### FOURTH DEFENSE

Plaintiff's claims must fail because even if Plaintiff is able to prove that a prohibited factor motivated Defendants' alleged employment actions, which Defendants expressly deny, the same action would have been taken even absent such motivation.

### FIFTH DEFENSE

Plaintiff's complaint is barred, in whole or in part, because Defendants exercised reasonable care to prevent and correct promptly any discriminatory or retaliatory conduct and because Plaintiff unreasonably failed to properly take advantage of any preventive or corrective opportunities provided by the Defendant or to avoid harm otherwise.

### SIXTH DEFENSE

Plaintiff's Title VII and ADA claims are barred to the extent that she failed to exhaust administrative remedies for each of the adverse actions asserted.

### SEVENTH DEFENSE

Plaintiff's ADA claim is barred because any accommodation Plaintiff requested was unreasonable and would have constituted an undue hardship.

### EIGHTH DEFENSE

Plaintiff's ADA claim is barred to the extent that she failed to control a controllable disability.

### NINTH DEFENSE

Plaintiff's ADA claim is barred because she did not engage in the interactive process.

### TENTH DEFENSE

Plaintiff's FMLA claim is barred to the extent that she failed to provide proper notice and documentation as required by the FMLA.

## <u>JURY TRIAL DEMAND</u>

Defendants demand a jury trial of all claims and defenses to the fullest extent allowable by applicable law and which do not deprive this Court of jurisdiction over the subject matter of any claim or the person of any party.

Dated:  January 25, 2019          Respectfully submitted,

By:  */s/ Alex J. Maturi*

Alex J. Maturi, admitted *pro hac vice*
(IL. Attorney No. 6309631)
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
312-499-6076 (telephone)
312-499-6176 (facsimile)
alexmaturi@paulhastings.com

Kenneth W. Gage, admitted *pro hac vice*
(NY Attorney No. 2477784)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
212-318-6000 (telephone)
212-319-4090 (facsimile)
kennethgage@paulhastings.com

*Attorneys for AT&T Mobility Services LLC and AT&T Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Alex J. Maturi, hereby certify that on this 25th day of January, 2019, I electronically

filed the foregoing with the Clerk of the Court using CM/ECF, which will automatically send

email notification of such filing to all counsel of record.

<u>  /s/ Alex J. Maturi          </u>
Alex J. Maturi