# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

KATIA HILLS,

        Plaintiff,

            v.                                CASE NO. 3:17-CV-556-JD-MGG

AT&T MOBILITY SERVICES, LLC a/k/a
AT&T MOBILITY, LLC,

        Defendant.

## OPINION AND ORDER

Ripe before the Court are Plaintiff's Motion to Compel [DE 121] and Motion to Extend Expert Disclosure Deadlines [DE 122]. Through her motions, Plaintiff seeks complete responses to certain discovery requests that she argues are critical to the analyses of her retained expert. Thus, Plaintiff also seeks an extension of the expert disclosure deadlines in this case. As discussed below, Plaintiff's motions are granted.

As a preliminary matter, however, both parties—or more accurately their attorneys—have argued the instant motions in a manner that interferes with the just, speedy, and inexpensive resolution of the parties' discovery disputes. *See* Fed. R. Civ. P. 1. Hills's attorney violated the briefing page limits set forth in N.D. Ind. L.R. 7-1(e) by filing a 23-page reply brief, exceeding the 15-page limit by eight pages, without seeking leave of court. *See* N.D. Ind. L.R. 7-1(e)(2) (authorizing the Court to allow briefs exceeding the established page limits "for extraordinary and compelling reasons."). Additionally, counsel for both parties flouted the spirit of Local Rule 7-1(e) by including

substantive information in extensive single-spaced, smaller-font footnotes in their briefs. Had that information been included in the body of the briefs, all of them would have exceeded the governing page limits. The most egregious examples are footnotes 6–8 in Hills's reply brief, which consume almost two full pages of her brief. [DE 125 at 8–9]. And lastly, all counsel employed a vituperative tone in their briefs that impugned the motivation and tactics of opposing counsel rather than engaging in the constructive, civil dialogue envisioned for litigation by the Federal Rules of Civil Procedure.

Through this conduct, counsel for both parties have slowed progress in this case, increased the costs of litigation for the parties, and complicated the Court's efforts to ensure a fair and just resolution of the discovery disputes raised in the instant motions. Neither party should be prejudiced by the unprofessional conduct of their attorneys. To penalize Plaintiff for the excessive reply brief without some appropriate penalty for how both sides have disregarded the Local Rules and the Federal Rules of Civil Procedure would be unjust. Therefore, the Court will consider the briefs in full—including the lengthy footnotes—to ensure a fair and just outcome as to the instant motions. *See* Fed. R. Civ. P. 1. Yet counsel for both parties are **ADMONISHED** to comply fully with the rules applicable to this case and to conduct themselves professionally going forward, or risk sanctions.

## I.    RELEVANT BACKGROUND

Plaintiff Katia Hills worked for Defendant AT&T Mobility Services, LLC ("AT&T") as a non-managerial retail employee at its Cassopolis Street location in Elkhart, Indiana from April 7, 2014, through July 16, 2015. Her job titles during that time

included Retail Sales Consultant and Sales Support Representative. She contends that AT&T discriminated against her in its application of its "Sales Attendance Guidance" policy ("SAG Policy") under which employees accrue "points" or fractions thereof for unexcused absences and tardiness. Under the 2015 SAG Policy, in place in July 2015 when Hills was terminated, eight points was the threshold for discharge.

Points can be avoided if an absence qualifies as "excused" under the SAG Policy, which delineates categories of excused absences, none of which explicitly relate to pregnancy. [*See* DE 121-3 at 3; DE 121-4 at 3]. However, employees can avoid point accrual related to pregnancy by establishing a disability or taking FMLA leave. The 2011 SAG Policy, which was in place in April 2014 when Hills started working for AT&T, provided some discretion to excuse points in the face of extenuating or extreme circumstances. The 2015 SAG Policy, however, did not authorize such discretion.[1]

Hills was terminated in July 2015 after accruing points for a series of unexcused absences. Between October 2014 and April 2015, Hills accrued six points due to absences and late arrivals caused by complications of her pregnancy. During that time, she was not eligible for FMLA leave because she had not worked for AT&T long enough. When she became eligible, Hills pursued relief under the FMLA. As part of the FMLA application process, Hills was required to provide medical certification of her pregnancy-related absences. AT&T denied Hills's FMLA requests for two absences in May 2015 concluding that she failed to provide sufficient certification. Thus, Hills

---

[1] The parties dispute the extent of the discretion and who could exert the discretion under the respective policies. However, those details are not critical to resolving this motion. The mere existence of greater discretion under the 2011 Policy provides helpful context.

accrued two additional points, pushing her over the SAG Policy's eight-point threshold and triggering her termination.

After being terminated, Hills initiated this action raising multiple claims against AT&T, including claims based on alleged violations of the Pregnancy Discrimination Act ("PDA") and the Family Medical Leave Act ("FMLA"). More specifically, Hills's operative Second Amended Complaint alleges that AT&T applied the SAG Policy more strictly against her than against male or non-pregnant employees and that her FMLA request related to her pregnancy was denied improperly. [*See* DE 61].

Under this Court's original Rule 16(b) Scheduling Order, entered on March 20, 2019, the deadline for the close of all discovery was January 22, 2020. [DE 74]. On September 16, 2019, Hills propounded her First Request for Production of Documents ("First RFP") to AT&T. Hills sought *inter alia* information about comparators or similarly situated employees, training of supervisors and employees on the policies at issue in this case, and HR resources and tools educating employees on how to qualify for intermittent leave.

While AT&T produced some information in response, it has withheld (1) documentation of employee requests to excuse points for non-medical reasons under the SAG Policy that were denied; (2) TIF/PDF files associated with data concerning employee requests to excuse point for absences under the FMLA; (3) Area-wide complaints (including agency charges and union grievances) of pregnancy discrimination, FMLA interference or retaliation, disability discrimination, or sexual harassment against any managers besides Hills's and the co-worker she alleges

4

harassed her; (4) lost materials related to trainings completed by Hills's managers and herself; and (5) screenshots and other evidence of the online HR resources available to employees to learn about leave options and qualifications. AT&T objected to producing this information challenging its relevance, the burden of its production, and its proportionality to the needs of this case.

Counsel for the parties exchanged numerous communications from May 22, 2020, through September 7, 2020, trying to resolve these discovery disputes without the assistance of the Court. In the meantime, the Rule 16(b) Scheduling Order was amended four times at the parties' request. [*See* DE 86, DE 89, DE 99, and DE 114]. When the Court amended the Scheduling Order for the third time on March 25, 2020, Hills's expert deadline was extended until July 30, 2020, AT&T's expert deadline was extended until August 30, 2020, and the deadline for the close of all discovery was extended until October 15, 2020 [DE 99]. In a parallel order, the Court stated: "Any further requests for extension of discovery must be made to the presiding District Court Judge, and will not be granted without a showing of good cause, which does not include the mere agreement of the parties." [DE 101].

Upon a late July request from Hills, the Court amended the Scheduling Order for the fourth time on September 4, 2020, finding good cause to extend the discovery deadlines based on AT&T's "representation that all responsive data, including supplemental productions, [had] been produced." [DE 114]. Hills's expert deadline became September 15, 2020, and AT&T's expert deadline became September 30, 2020, but the overall discovery deadline remained October 15, 2020. In that Order, the Court

also added a September 30, 2020, deadline for the filing of any non-dispositive, discovery-related motions. Then on September 11, 2020, the Court denied Hills's motion for reconsideration, which asked that her expert deadline be held in abeyance pending resolution of an anticipated motion to compel regarding allegedly incomplete discovery responses from AT&T affecting her expert's ability to opine. [DE 118]. The Court concluded that Hills's motion was premature at best because no motion to compel had been filed.

On September 14, 2020, Hills filed the anticipated motion to compel, the substance of which is addressed in this Order. [DE 119]. Hills's motion also included another request to extend the expert disclosure deadlines. When confronted with Local Rule 7-1(a)'s requirement that motions be filed separately, Hills refiled her motion as the two instant motions on September 30, 2020, using identical briefing in support. [*Compare* DE 119, *with* DE 121 & DE 122; *see also* DE 123]. Both motions became ripe on October 5, 2020, following complete briefing.

Counsel for the parties in this case are also representing the parties in a parallel class action suit against AT&T in the Northern District of Georgia. *See Allen v. AT&T Mobility Servs. LLC*, No. 18-cv-03730-WMR (N.D. Ga.) ("*Allen*" or "the *Allen* litigation"). In *Allen*, the 2015 SAG Policy and subsequent iterations are the subject of the PDA claim. The *Allen* litigation resulted, in part, from this Court's denial of Hills's request to add the *Allen* plaintiff and maintain a class action in this Court. [DE 58]. Discovery has ensued in *Allen* through the class certification stage. The parties here agreed that AT&T would produce data of the same type and fields previously negotiated in *Allen* but

6

limited to the Area including Hills's store from October 1, 2012, through July 31, 2015.

Additionally, the *Allen* parties stipulated that Hills may access materials produced in

that case for use in this case. Notably, Hills's attorney submitted an expert report in

*Allen* that evaluated pregnancy-related disparities without any of the information

sought through the instant motion to compel.

The Court now turns its attention to the pending motion to compel and motion

to extend the expert disclosure deadlines.

## II.   PLAINTIFF'S MOTION TO COMPEL [DE 121]

Information is discoverable if it is nonprivileged, relevant to any claim or defense

in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "For

discovery purposes, relevancy is construed broadly to encompass 'any matter that bears

on, or that reasonably could lead to other matter[s] that could bear on, any issue that is

or may be in the case.'" *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind.

2009) (quoting *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind.2002)

(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Even when

information is not directly related to the claims or defenses identified in the pleadings,

the information still may be relevant to the broader subject matter at hand and meet the

rule's good cause standard. *Id.* (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214

F.R.D. 496, 502 (S.D. Ind. 2003)).

When a responding party withholds discoverable information responsive to a

party's discovery requests, a motion to compel discovery is allowed. Fed. R. Civ. P.

37(a)(3)–(4). *Id.* After all, "[a] responding party cannot unilaterally impose conditions

upon its compliance with a discovery request." *Gray v. Faulkner*, 148 F.R.D. 220, 222 (N.D. Ind. 1992). Rather, the responding party carries the burden "to show why a particular discovery request is improper" and must do so with specificity. *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006); *see also Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002). Yet, when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy. *Vajner v. City of Lake Station, Indiana*, No. 2:09-cv-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010).

Nevertheless, this Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996). As such, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496. Here, the parties dispute (1) which employees constitute proper PDA comparators, (2) the extent of documents regarding leave taken by other employees that is proportional to the needs of this case, (3) which employee complaints are relevant to Hills's claims, (4) the timing of Hills's requests for online HR resources, and (5) the propriety and proportionality of Hills's General Instructions in her First RFP requesting information related to unavailable training materials.

## A.      PDA Comparators: Denied Requests to Excuse Non-Medical Absences

The PDA expressly mandates that pregnant workers "be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k); *see also Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1343 (2015). The PDA thus "requires courts to consider the extent to which an employer's policy treats pregnant women less favorably than it treats nonpregnant workers similar in their ability or inability to work." *Id.* at 1344. The three-part *McDonnell Douglas* burden-shifting framework for proving Title VII disparate treatment claims also applies to PDA claims. *Id.* at 1353.

In meeting her burden to establish a *prima facie* case of disparate treatment based on pregnancy-related limitations, Hills must show "that she belongs to a protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Id*. at 1354. Citing *Young*, Hills contends she is entitled to see how employees who were absent for any non-pregnancy-related reason—medical or non-medical—fared under the SAG Policy so she can compare AT&T's treatment of them to those who were absent for pregnancy-related reasons. However, AT&T did not produce such data regarding denied requests for non-medical leaves in *Allen*. AT&T confirmed in writing to Hills that it would not produce or rely upon any such data in this case either. In support, AT&T argues that employees whose non-medical leave requests were denied, causing them to accrue points under the SAG Policy, are not valid comparators under *Young*.

9

The language of the PDA defines valid comparators generally as "nonpregnant persons with similar disabilities." *Young*, 135 S. Ct. at 1350. AT&T contends that under *Young*, nonpregnant comparators must share "comparable physical limitations" and face "a situation [that] cannot reasonably be distinguished from" the pregnant plaintiff's. [DE 120 at 13]. AT&T overstates the effect of *Young*.

In *Young*, the plaintiff alleged that her employer, UPS, had policies that accommodated workers injured on the job, suffering from ADA disabilities, or having lost their DOT certifications. *Young*, 135 S. Ct. at 1347. The *Young* plaintiff was a pregnant UPS driver whose doctor imposed work limitations that left her unable to satisfy UPS's lifting requirements for drivers. *Id.* at 1346. The plaintiff's manager told her that she could not return to work during her pregnancy because of the lifting limitations and determined that the plaintiff did not qualify for a temporary alternative work assignment. *Id.* Yet other UPS drivers received accommodations for similar or more serious disabilities incurred both on and off the job and for losing their DOT certifications for medical and non-medical reasons. *Id.*

Faced with these facts, the Supreme Court held that a genuine dispute of material fact existed "as to whether UPS provided more favorable treatment to at least some employees whose situation [could not] reasonably be distinguished from [the plaintiff's]." *Id.* at 1355. In reaching this conclusion, the Court rejected both the plaintiff's and UPS's competing interpretations of the PDA. *Id.* at 1349–50. Finding that the *McDonnell Douglas* burden-shifting framework applied to PDA claims, the Court concluded that a PDA "plaintiff can create a genuine issue of material fact as to whether

a significant burden exists by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id.* at 1354.

Here, AT&T cites *Young* when asking this Court to limit valid PDA comparators in this case to those who faced physical limitations comparable to those of Hills. However, the PDA does not require a comparison of particular limitations shared by pregnant and non-pregnant workers. Rather, the PDA dictates comparison of pregnant and non-pregnant workers' "ability or inability to work." *See* 42 U.S.C. § 2000e(k). The *Young* plaintiff was unable to lift as much as UPS required of its drivers because of her pregnancy but she was still able to perform other work. Thus, the comparison of the ability or inability to work in *Young* was necessarily driven by the physical limitations that precluded the plaintiff from performing some of the duties assigned to her as a UPS driver.

Hills's pregnancy, however, made her unable to work at all. As a result, non-pregnant workers at AT&T can arguably be similar to Hills "in their ability or inability to work" simply by being absent, by being unable to perform any work, regardless of whether their absence and inability to work was caused by a medical or non-medical reason. Consequently, AT&T's reliance on *Young* to withhold data regarding denied requests to excuse absences caused by non-medical reasons is misplaced. AT&T has not established that such individuals cannot be valid comparators based on *Young*. Such a determination is a fact-intensive inquiry into whether a similarly situated person is comparable in all material respects and is reserved for the factfinder. *Barbera v. Pearson*

11

*Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018); *cf. Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009). AT&T has not presented any authority to suggest that legal considerations override the necessary factual inquiry in this case. Rather, AT&T cites five distinguishable cases[2] as examples of courts denying motions to compel production of evidence related to non-comparators finding those pursuits to be nothing more than fishing expeditions. [DE 120 at 14]. These cases do indeed reflect decisions about who constituted valid comparators and what constituted the proverbial fishing expedition. Yet each of those decisions were based on the unique facts of those particular cases. Similarly, the Court must look closely at the unique facts of this case to determine who is a valid comparator to Hills and whether her request for leave requests denied for non-medical reasons amount to a fishing expedition.

Moreover, the agreement of the *Allen* parties to exclude information regarding denied requests for non-medical leave to date does not automatically dictate the definition of a valid comparator in this case. First, determining who constitutes valid PDA comparators is a fact-intensive, plaintiff-by-plaintiff analysis as demonstrated above. Given the unique circumstances of Hills's pregnancy disability, discovery is warranted into denied non-medical leave as preparation for the fact-finder's inquiry into who constitutes a valid comparator at the dispositive stages of this case.

---

[2] *James v. Hyatt Regency Chicago*, 707 F.3d 775, 783–84 (7th Cir. 2013); *Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D. Wis. Sept. 4, 2020); *Garner v. St. Clair Cty.*, No. 15-cv-535 JPG-DGW, 2016 WL 146691, at *3 (S.D. Ill. Jan. 13, 2016); *King v. Nw. Cmty. Hosp.*, No. 09 C 5903, 2010 WL 11712048, at *2 (N.D. Ill. Apr. 19, 2010); *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 620–21 (S.D. Ind. 2002).

12

Second, the parties in *Allen* reached agreement as to the scope of discovery related to class certification at an early stage of that class action litigation. Hills presents her case here as a sole plaintiff—not as a class representative. The discovery question here is related to the full merits of Hills's claims, not just class certification. Therefore, while counsel's agreements in *Allen* are noteworthy given the similarities between both cases, the cases are not identical and cannot be treated that way. The unique aspects of Hills's claims here must be considered fully just as the *Allen* claims must be considered in light of any unique circumstances presented to the District Court for the Northern District of Georgia.

In sum, AT&T has not met its burden to show that Hills's request for data regarding denied requests to excuse absences caused by non-medical reasons is improper. *See Kodish,* 235 F.R.D. at 449–50.

### B.    TIFs/PDFs Associated with Area-wide FMLA Data

Hills does not dispute that AT&T has already produced Area-wide medical leave data, which provides the date and length of each absence, the date of each request, the date on which the company received the medical certification forms and any recertification forms, the date on which the company responded to the request, whether and when the request was denied or approved, the reason for the denial, and all the substantive information that any medical provider included on each medical certification submitted (including timing, diagnosis, category, limitations, duration, relevant treatment dates, and a catch-all free text field for anything not covered by these or the other fields in the data). However, Hills argues that she is entitled to the TIF or

PDF files associated with that data as they are relevant to both her PDA claim and her FMLA interference claim.

The elements of Hills's PDA claim are outlined above. To prevail on her FMLA interference claim, Hills must establish that "(1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled." *Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395, 398 (7th Cir. 2019). Hills contends that the FMLA provides the right to take intermittent leave without onerous, unreasonable re-certification requirements as a benefit to employees. *See* 29 U.S.C. § 2613(e). Hills asserts that AT&T interfered with this right by assessing pregnancy-related FMLA absences differently than non-pregnancy-related absences. Accordingly, Hills argues that discovery into the process AT&T used in assessing FMLA absence requests is necessary to establish her claims and that the medical leave data produced to date does not illuminate that process.

AT&T objects to Hills's request for correspondence and documentation between AT&T and the employees regarding medical certifications as irrelevant and disproportional to the needs of this case. AT&T attempts to support its objections to Hills's request on multiple grounds. First, AT&T notes that the TIFs/PDFs requested here have not been produced in *Allen*. While this may be true, the *Allen* litigation poses challenges different from those in this case. Most importantly, the larger number of litigants in the *Allen* class action makes for a much larger swath of comparator

14

documentation than in this single-plaintiff case.[3] Thus, comparison to the *Allen*

production is not helpful in determining the relevance or proportionality of Hills's

request here.

Second, the Area-wide medical leave data AT&T has already produced does not

elucidate the process AT&T used in making the FMLA decision reflected in the data.

The anonymized excerpt of the produced data AT&T attached as an exhibit to its brief

exemplifies this gap of information. [*See* DE 120-7]. The data produced thus far

describes outcomes related to FMLA requests to AT&T but provides no insight into the

process for securing medical certification for intermittent leave. Thus, the medical leave

data already produced does not provide all the relevant information as AT&T suggests.

Third, AT&T prematurely marshals facts to its own benefit, which would short-

circuit full discovery in this case. Discovery is intended to be a broad exercise where the

parties lay all their cards on the table, so to speak, to reveal the truth behind the claims

and defenses at issue in the case. *See Cunningham,* 255 F.R.D. at 478. Here, AT&T argues

that its process related to intermittent leave requests is irrelevant to Hills's claims

because she never submitted any medical certification that she required intermittent

leave. Hills does not dispute this fact. Instead, she explains that her claim is based on

her lack of notice, allegedly caused by AT&T's policies and practices, as to the

availability of intermittent leave and its requirements. Thus, gathering the TIFs/PDFs

associated with the medical leave requests could indeed lead to admissible evidence as

---

[3] Hills claims that documentation as to 40,000 individuals would be involved in *Allen* while only 118 individuals are relevant to Hills's claims. [DE 125 at 9 n.8 (quoting a July 1, 2020, email between counsel [DE 126-2 at 2])].

to disparities in how AT&T informed pregnant employees of their rights under the FMLA and then handled pregnant employees' FMLA requests.

Additionally, AT&T cites to its policies, forms, and training materials as conclusive proof that there is no difference in how it handles pregnancy-related and non-pregnancy-related leave requests. Yet that is exactly the issue Hills raises in this case. And AT&T cannot unilaterally define the scope of discovery based upon its own theory of the case. *See Gray*, 148 F.R.D. at 222. Furthermore, corporate directives alone do not protect against illegal discrimination in practice. Thus, discovery into the practical application of those corporate directives is relevant to Hills's disparate treatment claims.

Fourth, AT&T objects to producing the additional documentation based on the burdens of such production. Both Hills and AT&T agree that producing responsive discovery is a burden to any party. The concern becomes whether that burden is disproportional to the needs of this single-plaintiff case and amounts to an improper fishing expedition. *See* Fed. R. Civ. P. 26(b)(1). However, "[b]efore restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson*, 281 F.3d at 681 (internal quotations omitted). In *James v. Hyatt Regency of Chicago*, the district court's finding that the plaintiff was not entitled to an additional fishing expedition into documents relating to any leave, including but not limited to

16

FMLA and ADA leave, of all of Hyatt's employees over an eleven-year period was affirmed. 707 F.3d at 784.

AT&T analogizes Hills's request here to the fishing expedition in *James*. Yet in *James*, 2,400 leaves of absence were at issue over the course of eleven years. Here, AT&T indicates that only 640 absences, 300 leave requests, and 100 medical certifications are at issue over the agreed-upon two-and-a-half-year period. Thus, Hills seeks information regarding a much smaller universe of possible comparators in the Area agreed to by the parties. Hills's request is also reasonable in scope because of the small employee base of her store and because the same Area Retail Sales Manager, Jason Jenkins, had oversight of all the stores in the Area, including Hills's store. Moreover, AT&T fails to quantify the costs in time and money to produce the responsive TIFs/PDFs leaving the Court unable to ascertain the full parameters of its burden of production to compare to the needs of this case. Without more, AT&T has not established with specificity that this request is improper while Hills has established relevancy. *See Kodish,* 235 F.R.D. at 449–50; *Vajner,* 2010 WL 4193030, at *2.

## C.    Other PDA, ADA, and FMLA Complaints

Hills's discovery requests sought production of complaints of pregnancy discrimination, disability discrimination, FMLA interference and retaliation, and sexual harassment—the same claims she raises in this lawsuit— by other employees in her Area to show AT&T's practices related to pregnant employees. In her Motion, Hills agrees to forgo sexual harassment complaints but still seeks Area-wide pregnancy and disability discrimination and FMLA complaints.

AT&T produced all such complaints related to alleged in-store comparators and Hills's store managers. However, AT&T withheld similar information from the approximately nine other stores in the same Area arguing they would be unrelated to anyone connected directly to Hills's particular claims. AT&T also asserts that there were no pregnancy-related or maternity-related complaints of discrimination, harassment, retaliation, or FMLA interference in Plaintiff's Area during the relevant time period. As such, AT&T concludes that the complaints requested cannot be relevant to Hills's pregnancy-related claims. Yet, Jason Jenkins, the subject of complaints himself, served as the Area Retail Sales Manager overseeing Hills's store and all the other stores in the Area. [*See* DE 126-8]. If nothing else, the practical effects in Hills's Area of the discretionary authority provided by the 2011 SAG Policy make the Area-wide complaints relevant to Hills's individual claims.

Indeed, the scope of discovery in employment discrimination cases "is particularly broad because an employer's general practices are relevant even when a plaintiff is asserting an individual claim . . . ." *Vajner*, 2010 WL 4193030, at *1 (internal quotation omitted). ); *see also King*, 2010 WL 11712048, at *2 (compelling the production of retaliation complaints against the employer hospital's main campus, not just the subdivision where the plaintiff worked, for the time period in question because the human resources department involved in the alleged misconduct oversaw personnel matters at the entire main campus); *cf. Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (finding discovery requests regarding discrimination from supervisors uninvolved with the plaintiff's termination irrelevant). Moreover, AT&T

18

agreed that the scope of discovery in this case should extend to the entire Area and has already produced some Area-wide personnel data.

Thus, Defendant has not met its burden to show that production of Area-wide complaints of pregnancy and disability discrimination, retaliation, or FMLA interference would improper. *See Kodish*, 235 F.R.D. at 449–50.

### D.     Online HR Resources & Training Materials

Several of Hills's Requests for Production of Documents propounded in September 2019 seek information regarding online human resources available to AT&T employees, including AT&T's HR OneStop and its Hotline. [*See e.g.*, DE 121-13 at 12, ¶¶ 9, 11]. The language of these requests is broad. For instance, in Request No. 9, Hills asks for "[a]ll documents relating to use AT&T OneStop, including but not limited to the OneStop IVR system, including instructions for use, documentation of resources or tools available through AT&T OneStop, and policies or guidelines for use of AT&T OneStop." [DE 121-13 at 12, ¶ 9]. Hills sought such information based on AT&T's defense theory that she could have avoided incurring points for her pregnancy-related absences had to availed herself of AT&T human resources web-based guides. After deposing some AT&T employees, however, Hills became concerned that AT&T had not produced screenshots or other documents sufficient to examine these touted resources as well as an HR Poster allegedly displayed at Hills's store. Therefore, on September 7, 2020, Hills requested this information via email to AT&T's counsel before filing the instant motion to compel.

Despite arguing that Hills had not formally requested the screenshots and other related online information until the day after she filed the instant motion to compel when she served her Fourth Set of Requests for Production and that Hills did not seek a conference to attempt to resolve this issue before filing the motion to compel, AT&T searched for screenshots or other captures of the contents of the HR OneStop intranet site as it stood in the relevant timeframe of October 2012 through July 2015. In that search, AT&T found no screenshots and confirmed that it produced the documents in its possession, custody, and control regarding HR OneStop as it existed during the relevant period. In addition, AT&T indicates that it continues to search for the poster or posters in Hills's store.

Taking AT&T at its word, the Court would naturally assume that AT&T has met its obligations at this time and that it is committed to timely supplementation of any information, including posters, it finds in its ongoing search efforts. However, Hills refuses to accept AT&T's assertions because screenshots for a variety of online resources related to the disputed attendance policy, including HR OneStop, were produced in discovery in the *Allen* litigation. If that is true, the issue of screenshots should be moot as the parties have agreed that Hills could see and use the discovery from *Allen*.

Therefore, to the extent that AT&T has not produced any of the *Allen* discovery or has found any other responsive information, it must supplement its production. Indeed, the online resources at issue here have been the subject of Hills's requests for production since September 2019 such that she is entitled to this information even at this late date.

20

E.      **Training Materials**

Hills has requested materials AT&T used in training managers to implement the policies contested in this action. Such information is relevant to determining whether the Hills's managers complied with the applicable corporate policies in their treatment of her during her pregnancy. Additionally, such training materials could provide insight into how AT&T prepared its managers to use the discretion vested in them to excuse points and discipline employees. AT&T appears to have understood the relevance of these materials, at least generally, as it produced the training histories for Hills herself, the assistant store manager in her store, her store manager, and her Area manager. AT&T also produced the underlying materials related to attendance, performance evaluations, discipline, coaching, lateral movements, transfers, discrimination (including pregnancy-related discrimination), retaliation, and investigations of discrimination or retaliation consistent with the parties' agreement as to the scope of discovery.

According to AT&T, materials for a minority of the relevant training courses are no longer available. In the "General Instructions" incorporated into Hills's First Set of Requests for Production, she requests that

> If any responsive document was at any time, but is no longer, in your possession or subject to your control, state: (a) whether the document is destroyed, lost, or transferred to others and, if so, to whom; (b) the circumstances surrounding the disposition of the document and the date of its disposition; and (c) the name and address of the person(s) last known to be in possession, custody, or control of such document.

21

[DE 121-13 at 7]. AT&T has not produced this explanatory information regarding the unavailable responsive training materials. Instead, AT&T objects to the General Instructions as requests for information via a mechanism not contemplated or authorized by the Federal Rules of Civil Procedure. AT&T also argues that Hills has not specified which training documents she now wishes to compel or how they are central to her claims or why AT&T should have known that these documents were relevant when Hills filed her EEOC Charge and her Complaint in this action. Neither of AT&T arguments here are persuasive.

Preliminarily, AT&T is correct that the Federal Rules do not discuss the concept of "General Instructions" as a tool of discovery available to litigants. *See* Fed. R. Civ. P. 27(a)(3)(B). Moreover, a motion to compel should be denied with a movant has not propounded a formal discovery request or otherwise complied with the Federal Rules and Local Rules before filing the motion. *Ventre v. Datronic Rental Corp.*, No. 90 C 3289, 1993 WL 524377, at *3–*4 (N.D. Ill. Dec. 13, 1993). However, Fed. R. Civ. P. 34, which governs requests for production of documents, does not dictate the format of those requests. Thus, Hills's General Instructions—mere extensions of the enumerated requests describing the requested materials with reasonable particularity—are part of her formal discovery requests. As such, this situation is distinguishable from the *Ventre* facts where the movant sought to compel work product without propounding any formal discovery request for that information. 1993 WL 524377, at *3–*4.

Furthermore, the status of unavailable materials Hills seeks is relevant to any argument for spoliation and any determination of the consequences of the missing

information in this litigation. Hills may be entitled to an inference that the unavailable documents would support her claims if the following conditions are met. *See Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). To draw an inference that the unavailable training materials contained information adverse to AT&T, Hills will need to establish that AT&T "intentionally destroyed the documents in bad faith" for the purpose of hiding adverse information. *Id.* (citing *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir.2008); *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002); *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008)). Yet a spoliation sanction would not be appropriate if AT&T did not know or could not have known that litigation involving the documents was imminent. *See Trask–Morton,* 534 F.3d at 681. Nevertheless, "a violation of a record retention policy creates a rebuttable presumption that the missing record contained evidence adverse to the violator." *See Norman-Nunnery,* 625 F.3d at 428–29 (citing *Park,* 297 F.3d at 615). Thus, Hills's request for details about the unavailable training materials is both relevant and proportional to the needs of the case and was properly requested in her First Set of Requests for Production of Documents.

### F.    Conclusion about Hills's Motion to Compel

As outlined above, AT&T has not demonstrated that Hills's discovery requests here at issue exceed the liberal scope of discovery envisioned by Fed. R. Civ. P. 26(b). As such, Hills is entitled to the information requested within the confines of the parties' agreement temporal and geographic limitations outlined above.

### III.   PLAINTIFF'S MOTION TO EXTEND EXPERT DISCLOSURE DEADLINES [DE 122]

Despite AT&T's argument to the contrary and Hills's disjointed approach to the end of discovery in September 2020, Hills complied with the Court-imposed deadline for filing the instant nondispositive, discovery-related motion to compel along with her renewed motion to extend the expert disclosure deadlines in this case. In so doing, Hills was within her right to wait on this Court's decision on those motions before proceeding with expert discovery. Moreover, the discovery at issue in the motion to compel would understandably be relevant to an expert's analysis of the facts of this case. Additionally, the record shows that neither party pursued discovery as efficiently or quickly as possible from the beginning of this case, often due to circumstances beyond their control. Thus, AT&T has not demonstrated that Hills was dilatory.

Instead, Plaintiff has demonstrated good cause for one more, brief extension of the expert disclosure deadlines such that the Court will grant her motion to extend the expert disclosure deadlines as detailed below.

### IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Hills's Motion to Compel [DE 121]. AT&T is **ORDERED** to supplement its production of information responsive to the discovery requests outlined above *instanter*, but no later than **August 4, 2021**. The Court also **GRANTS** Hills's Motion to Extend Expert Disclosure Deadlines. [DE 122]. Plaintiff's Expert Disclosure Deadline is **EXTENDED** until **September 3, 2021**. Defendant's Expert Disclosure Deadline is **EXTENDED** until **September 17, 2021**. As a

result, the deadline for the close of all discovery is **EXTENDED** until **October 8, 2021**.

No further extensions will be granted extraordinary cause.

      **SO ORDERED** this 22nd day of July 2021.


                                     s/Michael G. Gotsch, Sr.
                                     Michael G. Gotsch, Sr.
                                     United States Magistrate Judge