IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KATIA HILLS,<br><br>        Plaintiff,<br><br>-against-<br><br>AT&T MOBILITY SERVICES LLC a/k/a<br>AT&T MOBILITY LLC,<br><br>        Defendant. | Civil No.: 3:17-cv-00556-JD-MGG |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**INTRODUCTION**

In the final 3 weeks of Plaintiff Katia Hills's ("Plaintiff" or "Hills") pregnancy, she visited her ob-gyn or the emergency room 10 times, sometimes causing her to miss work. Because of Hills's pregnancy-related absences, Defendant AT&T Mobility Services LLC ("AT&T") fired her. It did so because, under its attendance policy, Hills accrued too many "points" – demerits imposed due to absences AT&T deemed "unexcused."

On its face, AT&T's policy punishes pregnant workers more harshly than non-pregnant workers. Multiple other categories of absence, from jury duty to bereavement leave to disability accommodation, are automatically "excused," and therefore spared points, but pregnancy-related absences are not. Indeed, in the 15 months of Plaintiff's employment, she was the only pregnant person working at her AT&T store, and the only person at that store fired for attendance points.

AT&T's disparate treatment of pregnancy, and of Hills, violates the Pregnancy Discrimination Act ("PDA"). The PDA demands that pregnant workers be treated "the same" as non-pregnant people "similar in their ability or inability to work." Here, there is no genuine issue of material fact that AT&T's attendance policy does not treat pregnancy-related absences "the same" as numerous other categories of absence. There also is no genuine issue of material fact that, due to AT&T's disparate policy terms, Hills was *ineligible to have any pregnancy-related absences excused during most of her pregnancy*, while co-workers' absences due to disability, jury duty, bereavement, among others, were eligible to be automatically excused. There is no genuine issue of material fact that Hills in fact incurred points for pregnancy-related absences. And there is no genuine issue of material fact that, but for those points, AT&T would not have fired Hills in July 2015.

AT&T has not provided any justification for refusing to excuse pregnancy-related absences on the same terms as it excuses absences for reasons other than pregnancy. Accordingly, Plaintiff is entitled to summary judgment on her claim that AT&T's attendance policy violates the PDA.

**FACTUAL BACKGROUND**

Hills began working at AT&T's Cassopolis Street store in Elkhart, Indiana, on April 7, 2014, when she was 23 years old. *See* Local Rule 56.1 Statement of Undisputed Material Facts Regarding Plaintiff's Motion for Partial Summary Judgment (hereafter, "SMF"), ¶ 1. Although initially hired as a Sales Support Representative, Hills soon was promoted to Retail Sales Consultant ("RSC"). *Id.* ¶¶ 2-4. As an RSC, Hills' duties included selling cellphones and tablets to customers, as well as various phone and data plans, and handling "all administrative aspects of

2

the sale"; handling "service inquiries from customers"; and generally providing "efficient, courteous customer service. *Id.* ¶ 5. Hills loved sales and had hopes of eventually progressing to a management position with AT&T. *Id.* ¶ 6.

During Hills's employment, AT&T maintained a "Sales Attendance Guidelines" ("SAG") policy. The SAG policy in effect at the time Hills started with AT&T, dated October 11, 2011 (the "2011 SAG policy"), was supplanted as of May 1, 2015, by a revised version (the "2015 SAG policy"). SMF ¶¶ 8-9. Both versions of the SAG penalized employees' absences with "points," or fractions of points, for late arrivals, early departures, and full-day absences, unless AT&T deemed the absence "excused."[1] *Id.* ¶¶ 11-12, 29-30. Under the 2011 SAG, AT&T would discharge an employee once she reached 7 total points; the 2015 SAG increased the maximum point threshold to 8. *Id.* ¶¶ 23, 36.[2] Under both policies, interim point thresholds triggered other forms of discipline – first a counseling notice, then a written warning, and then a final written warning. *Id.*

The 2011 SAG listed 11 express categories of "excused" absences – that is, absences that would *not* trigger imposition of a point or fraction of a point:

> [A]pproved leave of absence, scheduled vacation, scheduled excused days with pay, jury duty, bereavement, court subpoenas, military leave, short term disability,

---

[1] Under both the 2011 and 2015 SAG policies, employees were assessed points for each unexcused absence, tardy, or early departure according to the following progression: 0 points for the first five minutes an employee is tardy, after 6–15 minutes .25 point accrues, after 16–30 minutes .5 point accrues, after 31–120 minutes .75 point accrues, after 121 minutes 1 point accrues, and a day of absence is also 1 point. SMF ¶¶ 20, 34.

[2] The 2015 SAG policy also increased the length of time that an accrued point remained on an employee's record, from 6 months to a full year, thus largely negating any benefit to employees from the higher points threshold. SMF ¶¶ 22, 35.

FMLA (or other federal or state mandated leave), contractual time off for union business and any other absence that is mandated by law or Company policy.

SMF ¶ 13.[3]

Under the 2015 SAG policy, the list of excused absences was even longer, and included certain new express categories (noted with italics, below):

- Approved Leave of Absence
- Scheduled/Approved Vacation
- Jury Duty
- Qualified Bereavement
- Military Leave
- Company recognized Holidays
- Approved Short Term Disability
- *Approved Job Accommodations*
- Federal/State/*Municipal* mandated Leaves (i.e., FMLA, *ADAAA*, etc.)
- *Company initiated closings (i.e., inclement weather, etc.)*
- Contracted Time Off (Union Business)
- Court Subpoena (excused to extent as outlined per Labor Agreement)
- *Approved/Company Mandated Time Off (i.e., [Excused Work Days with Pay] vacation, disciplinary time, etc.)*

SMF ¶ 31.[4]

Additionally, though the 2011 policy afforded supervisors the discretion "to consider extenuating/extreme circumstances where appropriate," and accordingly, to

---

[3] Under the 2011 SAG, absences caused by a qualifying disability under the Americans with Disabilities Act ("ADA") were excused under two of these categories: "[O]ther federal . . . mandated leave" and "any other absence that is mandated by law." SMF ¶ 14.

[4] Under this version of the policy, workers with ADA-qualifying disabilities fit under both the "Approved Job Accommodations" excused absence category and the "Federal/State/Municipal mandated Leaves (i.e., FMLA, ADAAA, etc.)" category. SMF ¶ 32.

4

decline to impose a point or fraction of a point, as well as any corresponding discipline, *id.* ¶¶ 15-16, the 2015 SAG eliminated this option. *Id.* ¶ 37.

As reflected by the above lists, while both versions of the SAG policy in place during Hills's employment expressly envision numerous bases for automatic excused absence, neither version recognize pregnancy as a reason for an automatic excused absence. Rather, as AT&T's corporate representative confirmed, the *only* way for a pregnancy-related absence to be deemed excused, and therefore spared punishment, is for the pregnant worker to shoehorn her absence into one of three other categories on the SAG policy list: short-term disability ("STD") leave, Family and Medical Leave Act ("FMLA") leave, or leave as an accommodation of disability under the ADA. *Id.* ¶¶ 39, 41. In other words, *pregnancy alone is never sufficient to avoid penalty*; instead, the pregnant worker must *also* qualify for protection under a separate statutory scheme (FMLA, ADA), or under an AT&T-created exemption (STD leave).

AT&T's approach imposes harsh consequences on pregnant workers, as Hills's experience reflects. For most of her pregnancy, which dated from the fall of 2014 until she gave birth on June 1, 2015, *id.* ¶¶ 7, 68, Hills *was ineligible to avoid punishment for a pregnancy-related absence*.

- The option to use **FMLA leave** only is available to pregnant workers who satisfy that statute's eligibility requirements, including having worked for the company for one year.[5] At the time Hills learned she was pregnant in October 2014, she had worked for AT&T

---

[5] *See* 29 U.S.C. § 2611(2)(A)(i) (defining "eligible employee"). Of course, a pregnant worker who satisfies the FMLA's eligibility requirements still might not qualify for an excused absence if she already has exhausted her 12 weeks of FMLA leave for another reason, such as to care for a seriously ill family member. *See* 29 U.S.C. § 2612(a)(1).

for only 6 months, so FMLA leave was out of reach for her until April 7, 2015 – *more than three-quarters of the way through her pregnancy*.[6]

- Under the **ADA**, the physical effects of a "normal" pregnancy, such as "morning sickness" or extreme fatigue – symptoms Hills experienced for most of her pregnancy and caused her to be absent – are excluded from the definition of "disability."[7] Until the final month of her pregnancy, when Hills was diagnosed with cholestasis[8] – a disorder of the liver[9] – Hills did not experience any of those specific pregnancy-related conditions that may qualify under the ADA as "disabilities."

- AT&T's **STD policy** applied only to absences of more than 7 consecutive days.[10] Until Hills went out on maternity leave on May 26, 2015, she did not need to take more than a day off at a time (or less) to attend to her pregnancy,[11] so STD leave was not an option to excuse her absences, either.

Under the express terms of AT&T Mobility's attendance policy, then, *for the vast majority of Hills's pregnancy, it was impossible for her to avoid "points"* when her pregnancy made her late, or required a doctor's visit, or necessitated that she stay home. The record

---

[6] SMF ¶¶ 1, 7, 68.

[7] U.S. Equal Employment Opportunity Commission, *Enforcement Guidance on Pregnancy Discrimination and Related Issues* (June 25, 2015), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#II ("pregnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability") (citations omitted).

[8] SMF ¶¶ 56-58.

[9] *See*, *e.g.*, Cleveland Clinic, "Cholestasis of Pregnancy," available at https://my.clevelandclinic.org/health/diseases/17901-cholestasis-of-pregnancy ("[Cholestasis] temporarily impairs . . . liver function in some pregnant women. This liver impairment causes bile (a substance made by the liver that helps digestion) to build up in the liver and bloodstream. . . . Cholestasis of pregnancy can cause complications for both the expectant mother and baby.").

[10] SMF ¶ 40.

[11] SMF ¶ 48.

6

evidence further confirms that Hills did, in fact, accrue points due to her pregnancy during this period of ineligibility. For instance, AT&T's FMLA Operations records reflect that Hills's store manager, Dion McGlown, contacted that department in December 2014 – 4 months before Hills qualified for FMLA leave – concerning her "recent abs [sic] due to pregnancy," SMF ¶ 50, and at deposition confirmed that "most of the points that [Hills] received discipline for" were due to her pregnancy. *Id.* ¶ 49. Indeed, by the time Hills finally qualified for FMLA leave in April 2015, she had accrued 6 points – just 1 point shy of termination under the terms of the SAG policy then in effect – and had received a final written warning, the last step before firing. *Id.* ¶ 53.

Hills' final weeks of pregnancy were especially difficult: From May 4, 2015 until she went on maternity leave on May 26, 2015, Hills visited her ob-gyn or the emergency room 10 times. *Id.* ¶¶ 54-66. During that period, she also received her cholestasis diagnosis; in addition to causing the pregnant person to experience intense itching – a symptom that Hills suffered, *id.* ¶¶ 56-57,[12] cholestasis poses significant danger to the fetus, including stillbirth, and usually necessitates early delivery.[13]

---

[12] *See, e.g.*, Mayo Clinic, "Cholestasis of Pregnancy," available at https://www.mayoclinic.org/diseases-conditions/cholestasis-of-pregnancy/symptoms-causes/syc-20363257 ("Intense itching is the main symptom of cholestasis of pregnancy. . . . Most women feel itchy on the palms of their hands or the soles of their feet, but some women feel itchy everywhere. The itching is often worse at night and may be so bothersome that you can't sleep.").

[13] Richard H. Lee, MD, *et al.*, *Society for Maternal-Fetal Medicine Consult Series #53: Intrahepatic Cholestasis of Pregnancy* (Feb. 2021), available at https://www.ajog.org/article/S0002-9378(20)31284-9/fulltext. Indeed, due to the cholestasis diagnosis, Hills began her maternity leave early, and delivered less than a week later, on June 1, 2015, after having labor induced. SMF ¶¶ 61, 67, 68.

Hills managed to avoid points for most of these May 2015 medical events, but AT&T rejected the medical certifications submitted by her provider for 2 of them. The first of these, on May 4, 2015, was due to Hills's visit to her ob-gyn for symptoms that ultimately were diagnosed as caused by cholestasis. SMF ¶ 56. The second point-triggering absence was on May 16, 2015 – a little over a week after Hills learned she had cholestasis and was warned that the condition endangered her fetus, and began a regimen of aggressive fetal monitoring, *id.* ¶¶ 58, 61-63 – when she went to the emergency room because she did not feel the fetus moving. *Id.* ¶ 64.[14]

The resulting 2 points became final on June 24, 2015. *Id.* ¶ 69. Those 2 points put Hills at the maximum 8 points under the 2015 SAG policy, and AT&T decided to fire her. *Id.* ¶ 71. Hills – still on maternity leave – was oblivious to this development, *id.* ¶ 70, and a few weeks later, on

---

[14] Because the May 4 and May 16 absences indisputably were due to Plaintiff's pregnancy and her pregnancy-related disability, Plaintiff contends that AT&T also violated the PDA, FMLA, and ADA in deeming those absences "unexcused" and imposing points for them. AT&T will, of course, contest those assertions in its anticipated Motion for Summary Judgment. When she submits her opposition to that motion, Plaintiff will put forward the extensive record evidence showing, among other material facts, that Hills's top managers and AT&T Human Resources personnel knew that the May 4 and May 16 absences were related to pregnancy, that Plaintiff attempted repeatedly to satisfy AT&T's onerous medical certification requirements to excuse those absences, and that AT&T failed in numerous respects to inform Plaintiff of her statutory rights to intermittent FMLA leave and to accommodation of pregnancy-related disability under the ADA – information that could have relieved Plaintiff from the obligation to serially submit proof that those absences were pregnancy-related.

For purposes of this Motion, however, Plaintiff asserts that AT&T violated the PDA on the independent, *undisputed* grounds that it provided her with *no* avenue for avoiding penalty for pregnancy-related absences until she became eligible for FMLA coverage in April 2015. That policy had the *undisputed* effect of putting Hills within 2 points of discharge, thereby providing the "but for" cause of her July firing when AT&T imposed points for the May 4 and May 16 absences.

July 13, 2015, Hills returned to the Cassopolis Street store, expecting to resume work as usual. *Id.* ¶ 72. Instead, a few days later, McGlown informed her of her discharge. *Id.* ¶ 73.

In contrast, during the same timeframe, Hills's peers at the Cassopolis Street store who may have been absent for myriad reasons other than pregnancy – including ADA-qualifying disability, jury duty, bereavement, military leave, union business, and court subpoenas, to name a few – were eligible to be *per se* excused, and did not suffer the same fate as Hills.[15] Unsurprisingly, in the 15 months of Plaintiff's employment, she was both the only pregnant person working at her AT&T store, and the only person at that store fired for attendance points. *Id.* ¶¶ 74-75.

---

[15] The record also contains evidence that some of Hills's non-pregnant co-workers also benefited from the "discretion" to excuse points and discipline that the 2011 SAG policy extended to supervisors, raising further questions as to discriminatory intent in Hills's case. Such evidence, and the admission by AT&T's corporate designee knew that store managers were applying such discretion inconsistently but did nothing to prevent such inequities, will be addressed in Plaintiff's opposition to AT&T's Motion for Summary Judgment.

So, too, will the facts (among other record evidence) that, (a) *prior to* her pregnancy, Hills herself benefited from store managers' exercise of discretion under the terms of the 2011 SAG policy; (b) store manager McGlown expressed biased attitudes toward pregnant workers and new mothers; (c) McGlown repeatedly pestered Hills about her intended duration of maternity leave; and (d) when Hills inquired about a post-maternity leave job reassignment, AT&T told her it would grant her request only if she took just 4 weeks of leave, rather than the full 12 weeks to which she was entitled.

But as with the record evidence relating to AT&T's unlawful refusal to excuse Plaintiff's May 4 and May 16 absences, proof of AT&T's bias toward pregnant workers need not be considered here. It is *undisputed* that Plaintiff's managers never exercised their delegated discretion to excuse her pregnancy-related absences. McGlown Dep. pp. 154:18–156:18; 162:2–163:6; 170:4–23. This evidence, coupled with the *undisputed* disparate treatment of pregnancy under the SAG policy's terms and the *undisputed* adverse effect of those terms on Hills, are sufficient, independent grounds on which to grant summary judgment on Hills's PDA claim.

## STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This Court is bound to construe all facts in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

Disputes concerning material facts are genuine only where "a reasonable jury could return a verdict for the nonmoving party," *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); further, the non-moving party bears the burden of showing that such a genuine dispute exists. *See, e.g.*, *Randall v. Rolls-Royce Corp.*, 742 F. Supp. 2d 974, 980 (S.D. Ind. 2010), *aff'd*, 637 F.3d 818 (7th Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Moreover, the "mere existence of a factual dispute, by itself, . . . is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment." *Randall*, 742 F. Supp. 2d at 981 (citing *Anderson*, 477 U.S. at 248). "If the nonmoving party fails to establish the existence of an element essential to [its] case, one on which [it] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## LEGAL ARGUMENT

AT&T's written attendance policy violates the PDA's clear directive: employers "shall" treat pregnant workers "the same" as non-pregnant colleagues who are "similar in their ability or

10

inability to work." In *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015), the Supreme Court made clear that unless an employer can articulate a compelling reason for failing to equally accommodate pregnant workers, the employer violates the PDA. Here, where AT&T maintained a facially discriminatory policy that automatically penalized pregnant workers' absences (unless they happened to fit within a separate exception), while automatically excusing a wide range of absences unrelated to pregnancy, where that policy directly caused Plaintiff's firing, and where AT&T cannot articulate any principled reason for disfavoring pregnancy, Hills is entitled to summary judgment on her PDA claim.

### I. UNDER *YOUNG*, EMPLOYER POLICIES THAT TREAT PREGNANT WORKERS WORSE THAN OTHERS "SIMILAR IN THEIR ABILITY OR INABILITY TO WORK" VIOLATE THE PDA UNLESS THE EMPLOYER HAS A "SUFFICIENTLY STRONG" REASON FOR DISFAVORING PREGNANCY

The PDA comprises two clauses: the first clause makes explicit that discrimination "because of sex" includes discrimination "because of . . . pregnancy, childbirth, or related medical conditions," while the second clause expressly mandates that pregnant workers "shall . . . be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

In *Young*, the Supreme Court adopted a modified version of the traditional three-part *McDonnell Douglas* burden-shifting framework for assessing claims brought under the PDA's second clause. *Young*, 135 S. Ct. at 1353-55. The new *prima facie* and pretext standards it articulated recognize that the PDA was enacted specifically to prevent employers from singling

11

out pregnancy for less favorable treatment;[16] accordingly, *any* failure by an employer to treat pregnant workers "the same" as non-pregnant workers is, by definition, a facial violation of the second clause, and the salient inquiry is whether the employer can offer sufficient justification for disfavoring pregnancy.

Under *Young*, a plaintiff makes out a *prima facie* PDA violation where she shows (1) that she "belongs to the protected class"; (2) "that she sought accommodation"; (3) "that the employer did not accommodate her"; and (4) "that the employer did accommodate others 'similar in their ability or inability to work.'" 135 S. Ct. at 1354.

If the employer puts forward "'legitimate, nondiscriminatory' reasons for denying her accommodation," *id.*, the plaintiff

> may reach a jury on [the issue of pretext] by providing sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's . . . [stated] reasons are *not sufficiently strong* to justify the burden, but rather – when considered along with the burden imposed – give rise to an inference of intentional discrimination.

*Id.* (emphasis added). Significantly, the Court admonished that, "consistent with the Act's basic objective," an employer does not meet its burden of producing evidence of a "sufficiently

---

[16] Congress enacted the PDA in 1978 as a direct rebuke to the Supreme Court's decision in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976). In *Gilbert*, the Court had approved an employer's exclusion of pregnant workers from an otherwise comprehensive temporary disability benefits policy that paid replacement wages to workers absent for a wide range of medical conditions. *Young*, 135 S. Ct. at 1353 (quoting *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678 (1983) (Congress' "'unambiguou[s]' intent in passing the [PDA] was to overturn 'both the holding and the reasoning of the Court in the *Gilbert* decision'")).

strong" reason for disfavoring pregnancy by reference to mere cost or convenience. *Id.* Rather, the twin touchstones for assessing the sufficiency of the employer's stated justification under the PDA second clause are feasibility and fairness: "[W]hy, when the employer accommodated so many, could it not accommodate pregnant women as well?" *Id.* at 1355.[17]

As outlined below, AT&T has not and cannot answer this question. Accordingly, Hills is entitled to summary judgment that AT&T violated the PDA when it fired her for her pregnancy-based absences from work.

II. **AT&T VIOLATED THE PDA AS A MATTER OF LAW BECAUSE ITS POLICY TREATED HILLS WORSE THAN THOSE "SIMILAR IN THEIR ABILITY OR INABILITY TO WORK" AND AT&T CANNOT JUSTIFY THE BURDEN IMPOSED BY SUCH DISPARATE TREATMENT**

A. **AT&T's policy, by its express terms, establishes a *prima facie* case of pregnancy discrimination under *Young*.**

The Supreme Court admonished in *Young* that the new *prima facie* standard is "not intended to be an inflexible rule," "not onerous," and "not as burdensome as succeeding on an 'ultimate finding of fact as to' a discriminatory employment action." 135 S. Ct. at 1353-54 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978)). Nor is the plaintiff required to "show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways." *Young*, 135 S. Ct. at 1354; *see also*

---

[17] Applying these standards, the Court found that Peggy Young, a pregnant UPS delivery driver restricted in her ability to perform heavy lifting, arguably had created a triable PDA case where UPS afforded "light duty" to others who were limited in their ability to perform all delivery driver duties because of occupational injuries, ADA-qualifying disabilities, or lack of Department of Transportation certification, but did not extend that benefit to pregnant drivers. 135 S. Ct. at 1343.

*Durham v. Rural/Metro Corp.*, 955 F.3d. 1279, 1286 (11th Cir. 2020) (quoting *Lewis v. City of Union Cnty.*, 918 F.3d 1213, 1228 n.14 (11th Cir. 2019) (*en banc*)) ("[T]he comparator analysis under the PDA focuses on a single criterion – one's ability to do the job.").

Under the standard announced in *Young*, both versions of AT&T's SAG policy state a *prima facie* violation of the PDA: (1) pregnant workers are a protected class; (2) during the course of a pregnancy – even a "normal" pregnancy without complication – workers will arrive late, leave early, and be absent because of their pregnancy, and will seek to have those absences excused so as to avoid penalty; (3) AT&T does not excuse pregnancy-related absences and automatically penalizes pregnant workers who miss work unless they happen to fit within a separate exception; and (4) AT&T automatically excuses a wide variety of other occasional inabilities to work due to absences, from jury duty to bereavement to absences caused by ADA-qualifying disabilities.[18]

As to the application of AT&T's facially discriminatory policy to Plaintiff, the undisputed facts further show:

- From October 2014, when Hills learned she was pregnant, until April 7, 2015, when she became FMLA-eligible, she had incidents of lateness and full-day absence due to "normal" symptoms of pregnancy, SMF ¶¶ 49-51;

- Until April 7, 2015, when she became FMLA-eligible, it was impossible for Hills to avoid points or fractions of points for those pregnancy-related absences, under the terms of the 2011 SAG policy, *id.* ¶¶ 39-40, 47-48;

---

[18] The occasional need for absence due to pregnancy or a related condition renders an employee "similar in the ability or inability to work" as any other employee who needs to be absent due to jury duty, bereavement, or ADA-qualifying disability, to name a few, in that the need may arise unexpectedly and range in duration from a few hours to a few days.

- Accordingly, AT&T deemed these pregnancy-related absences "unexcused" and imposed points, *id.* ¶¶ 49-50, 53;

- Although the operative 2011 SAG policy during this period granted Hills's "supervisor" the discretion to excuse absences and steps of discipline, *id.* ¶¶ 15-16; neither Hills's Retail Store Manager, Dion McGlown, nor his supervisor, Area Retail Sales Manager Jason Jenkins, ever exercised such discretion to excuse any of Hills's pregnancy-related absences or steps of discipline, *id.* ¶¶ 24, 52;

- As of April 7, 2015, when Hills qualified for FMLA leave, she had accrued 6 attendance points, at least some of which were attributable to her pregnancy, and received a final written warning, *id.* ¶ 53;

- Hills received two additional points due to pregnancy-related absences on May 4, 2015 and May 16, 2015, *id.* ¶¶ 54-56, 64;

- But for having reached 6 attendance points prior to becoming eligible for FMLA leave to excuse pregnancy-related absences, Hills would not have been fired in July 2015, *id.* ¶¶ 71, 73; and

- In the 15 months of Hills's employment, she was the only pregnant person at the Cassopolis Street store, and the only one at the store whom AT&T fired for points accrued under the SAG policy. *Id.* ¶¶ 74-75.

These facts plainly satisfy the *prima facie* case. *See Young*, 135 S. Ct. at 1355 (where UPS granted "light duty" assignments to at least three categories of delivery drivers unable to perform all job duties, but not to pregnant workers, *prima facie* case satisfied, because UPS arguably "provided more favorable treatment to at least some employees whose situation cannot reasonably be distinguished from [the plaintiff's]"); *Durham*, 955 F.3d. at1286-87 (under *Young*, policy of automatically giving light duty to EMTs injured on the job while denying it to pregnant workers satisfied *prima facie* case); *Legg v. Ulster Cnty.*, 820 F.3d 67, 74 (2d Cir. 2016) (*prima facie* case satisfied where defendant County granted "light duty" to guards injured on the job but not pregnant workers); *Elease S., Complainant v. Brennan*, EEOC DOC 0120140731, 2017 WL

15

6941010, at *5 (EEOC Dec. 27, 2017) (*prima facie* case satisfied where pregnant mail carrier at risk of miscarriage denied temporary reassignment to desk work satisfied *prima facie* case where employer accommodated letter carriers injured on the job); *accord Jennifer K., Complainant v. Harker*, EEOC DOC 2020001035, 2021 WL 2365946, at *10 (EEOC May 20, 2021) (questions of fact as to fourth prong of *prima facie* case where pregnant plaintiff denied alternative job assignment that supervisor claimed was reserved for workers with disabilities).

Having raised the presumption that AT&T unlawfully "provided more favorable treatment to at least some employees whose situation cannot be reasonably be distinguished from [Plaintiff's]," *Young*, 135 S. Ct. at 1355, the burden shifts to AT&T to justify such disparate treatment. As discussed below, it has not, and cannot.

### B. AT&T has not and cannot justify the SAG policy's facially disparate treatment of pregnant workers such as Hills or the consequent burden on them, and therefore is liable under the PDA.

AT&T has yet to explain why it does not automatically excuse pregnancy-related absences, just as it automatically excuses absences caused by ADA-qualifying disabilities, bereavement, jury duty, and numerous other reasons. In fact, it does not appear that the company can even articulate a reason at all; when asked why the SAG policy does not include pregnancy-related absences among the enumerated categories of "excused" absences, AT&T's corporate representative responded, "I do not." SMF ¶ 42. That same representative admitted that she was not familiar with the requirements of the PDA and never had heard of the *Young* decision. *Id.* ¶¶ 43-44. She also conceded that AT&T had not, either before or after *Young*, taken steps to guide

supervisory or CAG personnel to specifically address the needs of pregnant workers. *Id.* ¶ 45.[19] Given that AT&T issued the 2015 SAG policy *after* the March 2015 *Young* ruling, such testimony speaks volumes about the consideration AT&T gives to pregnant workers – despite Congress's express command that employers must treat them "the same" as their non-pregnant peers.

AT&T's inability to explain, let alone justify, its wholesale neglect of pregnant workers' need for intermittent time off of work unless they qualify for leave under another statutory scheme – *i.e.*, the FMLA and/or ADA – or need to be absent more than 7 consecutive days, cannot, as a matter of law, rebut the presumption of discrimination created by the policy's expressly disparate terms.[20] The company has yet to explain why an employee who serves on a

---

[19] This corporate designee also could not say for sure whether a "normal" pregnancy, in and of itself, qualifies as a disability under the ADA. SMF ¶ 46. As noted *supra* at footnote 7, it does not.

[20] As the U.S. Equal Opportunity Commission explained more than two decades ago in its Guidance concerning the intersection of the PDA, the FMLA, and the ADA:

Q: Can a leave policy that complies with the FMLA violate Title VII?

A: Yes. An employee is protected by anti-discrimination laws such as Title VII regardless of how long s/he has been on the job, but an employee is not eligible for FMLA leave until s/he has been employed for 12 months. Thus, an employer policy that denies pregnancy leave during the first year of employment, but provides leave for other medical conditions, would discriminate against pregnant women in violation of Title VII. Additionally, a neutral policy that prohibits any employee from taking sick leave or short-term disability leave during the first year of employment could have a disparate impact on women and thus violate Title VII.

U.S. Equal Employment Opportunity Commission, *Guidance: The Family and Medical Leave Act, the ADA, and Title VII of the Civil Rights Act of 1964* (Nov. 1, 1995), *available at* https://www.eeoc.gov/laws/guidance/family-and-medical-leave-act-ada-and-title-vii-civil-rights-act-1964. *See also* U.S. Equal Employment Opportunity Commission, *Enforcement Guidance on Pregnancy Discrimination and Related Issues* (June 25, 2015), *available at*

jury for 8 days, for instance, will face no penalty, while a worker whose pregnancy causes her to be absent 8 times in the course of her pregnancy can face discharge. AT&T apparently believes that compliance with the FMLA and the ADA is sufficient to discharge its obligations under the PDA, when in fact quite the opposite is true. By ignoring pregnant workers who do not qualify for FMLA leave or ADA accommodation, the company reads the PDA's protections right out of the United States Code.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant her Motion for Partial Summary Judgment.

Date: November 15, 2021

Respectfully submitted,

/s/ Gillian Thomas
Gillian Thomas*
Lindsey Kaley*
American Civil Liberties Union
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 284-7356
Tel: (212) 519-7823
gthomas@aclu.org
lkaley@aclu.org

---

https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#IC1aii (discussing relationship among the PDA, FMLA, and ADA).

Lynn A. Toops, No. 26386-49
Lisa LaFornara, No. 35280-53
Cohen & Malad LLP
One Indiana Sq. Ste. 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

Joseph M. Sellers*
Kalpana Kotagal*
Harini Srinivasan*
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., Suite 500
Washington, DC 20005
Tel: (202) 408-4600
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
hsrinivasan@cohenmilstein.com
posadebe@cohenmilstein.com

*Counsel for Plaintiff Katia Hills*

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, I caused the foregoing *Plaintiff's Memorandum of Law in Support of Partial Motion for Summary Judgment* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

>  */s/ Gillian Thomas*
>  Gillian Thomas