**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

KATIA HILLS,

          Plaintiff,

   -against-

AT&T MOBILITY SERVICES LLC a/k/a
AT&T MOBILITY LLC,

       Defendant.

Civil No.: 3:17-cv-00556-JD-MGG

## <u>DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF MATERIAL FACTS ............................................................... 1

    A.  Plaintiff's Employment with AT&T Mobility ........................................... 1

    B.  AT&T's Neutral Attendance Management Policy ...................................... 2

    C.  Plaintiff's Attendance History .................................................................. 4

III. ARGUMENT ..................................................................................................... 7

    A.  The SAG is facially neutral. ..................................................................... 8

    B.  Plaintiff has not met her burden under Rule 56. ..................................... 10

        1. Plaintiff fails to meet her *prima facie* burden. ................................... 11

        2. Plaintiff fails to show that no reasonable jury could believe AT&T's reasons for denying Plaintiff excused absences. ................................ 14

    C.  Plaintiff fails to demonstrate that AT&T was aware that her unexcused absences were pregnancy-related............................................................. 16

IV.  CONCLUSION ............................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**  **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1985).............................................................................................8

*Antonetti v. Abbott Labs.*,
  563 F.3d 587 (7th Cir. 2009) ...........................................................................13

*Armfield v. Key Plastics, LLC*,
  No. 1:08 CV 110, 2011 U.S. Dist. LEXIS 80482 (N.D. Ind. July 22, 2011) ...........................7

*Durham v. Rural/Metro Corp.*,
  955 F.3d 1279 (11th Cir. 2020) ......................................................................12

*Durham v. Rural/Metro Corp.*,
  No. 4:16-cv-01604-VEH, 2018 WL 7892084 (N.D. Ala. Mar. 19, 2018) .............................12

*Hong v. Children's Mem'l Hosp.*,
  993 F.2d 1257 (7th Cir.1993) .........................................................................13

*Legg v. Ulster Cnty.*,
  820 F.3d 67 (2d Cir. 2016).............................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)......................................................................................8

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973), *as modified by Young v. United Parcel Servs. Inc.*, 575
  U.S. 206 (2015)...........................................................................................10

*McLaughlin Equip. Co. v. Servaas*,
  No. IP98-0127-C-T/K, 2004 WL 1629603 (S.D. Ind. Feb. 18, 2004).........................7, 13, 15

*Meadors v. Ulster Cnty.*,
  No. 1:09-cv-550, 2011 WL 12496693 (N.D.N.Y. Apr. 1, 2011), *vacated and
  remanded sub nom. Legg v. Ulster Cnty.*, 820 F.3d 67 (2d Cir. 2016)...............................13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ..........................................................................7

*Santos v. Wincor Nixdorf, Inc.*,
  No. 1:16-CV-440-RP, 2018 U.S. Dist. LEXIS 48736 (W.D. Tex. Mar. 23,
  2018) ......................................................................................................12

*Tex. Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981).......................................................................................7

*Young v. United Parcel Servs.*,
  575 U.S. 206 (2015) ................................................................................................ *passim*

**Statutes**

42 USC 2000e(k) ............................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................................................7

U.S. Equal Employment Opportunity Commission, *Enforcement Guidance on
  Pregnancy Discrimination and Related Issues* (June 25, 2015), available at
  https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-
  discrimination-and-related-issues ..............................................................................10

## I.      INTRODUCTION

Plaintiff's motion is based on speculation and a flawed argument that AT&T violates the Pregnancy Discrimination Act simply because it does not automatically excuse absences that may occur during pregnancy. The PDA neither mandates pregnancy leave nor requires that employers excuse all absences, even if pregnancy related. Rather, it requires that AT&T treat pregnant employees the same as other employees who are similar in their ability or inability to work.

In her motion, Plaintiff shows that *some* of her absences during pregnancy were not excused, but there is a genuine issue as to whether those were pregnancy-related. She ignores the evidence that absences shown to be pregnancy-related *were excused* by AT&T. Significantly, she fails to show that AT&T treated any non-pregnant employees any differently.

Plaintiff bears a high burden on summary judgment. She must establish through admissible evidence that no reasonable jury could find for AT&T on her claim under the PDA. On the record before this Court, a reasonable jury could certainly find that AT&T *did not* intentionally discriminate against Plaintiff. Therefore, her motion for partial summary judgment on Count One of her Complaint must be denied.

## II.      SUMMARY OF MATERIAL FACTS

### A.      Plaintiff's Employment with AT&T Mobility

During the relevant time, AT&T Mobility ("AT&T") operated retail stores in Indiana, managed by store managers and staffed by non-management, non-exempt bargained for employees ("Sales Employees"). (SMF ¶ 77-78).[1] From April 7, 2014 to July 16, 2015, Plaintiff

---

[1] Defendant's Rule 56-1 Statement of Genuine Disputes and Additional Material Facts, hereafter referred to as "SMF," is appended hereto.

Katia Hills (née Patino) worked in AT&T's Cassopolis Street, Indiana store. (*Id*. ¶¶ 1, 4, 76). She was originally hired as a Sales Support Representative but later transferred to the customer-facing position of Retail Sales Consultant. (*Id*. ¶ 4-5). Plaintiff was at all times represented by a union. (*Id*. ¶ 82).

Sales Employees like Plaintiff provided various in-store customer services, including the resolution of product inquiries, the sale of cellphones, tablets and data plans, and other administrate aspects of the sale. (*Id*. ¶ 5). To ensure the best possible service to customers, AT&T depended on Sales Employees to report to work on time and as scheduled, absent a good excuse. (*Id*. ¶ 83).

### B.    AT&T's Neutral Attendance Management Policy

AT&T maintained written guidance regarding discipline for attendance in the form of Sales Attendance Guidelines ("SAG").[2] (*Id*. ¶ 84). Under the SAG, a Sales Employee incurred "points" (or fractions of points) each time an absence, tardy, or early departure was unexcused. (*Id*. ¶ 86). The SAG also contained recommended progressive levels of discipline, up to and including dismissal, as a Sales Employee's point total escalated over time. (*Id*. ¶ 87). Points did not remain on a Sales Employees' record forever; they expired within a year. (*Id*. ¶ 35).

AT&T understands that any number of life circumstances may keep an employee from reporting to work as scheduled. (*Id*. ¶ 83). The SAG therefore recognized a non-exhaustive list of excuses available to Sales Employees who found themselves with attendance problems. (*Id*. ¶ 94). For example, Sales Employees were excused from work for approved leaves of absence

---

[2] There were two versions of the SAG in effect during Plaintiff's employment: the "2011 SAG" (in effect from her hire until April 30, 2015); and the "2015 SAG" (in effect from May 1, 2015 through the date of her termination). For purposes of this Summary, they can and have been discussed collectively. For further detail on the intricacies of each SAG, *see* Defendant's Statement of Genuine Disputes and Additional Material Facts, appended hereto.

(FMLA, etc.), approved job accommodations, approved short-term disability leave, or qualified bereavement, among many other reasons. (*Id*. ¶ 31). These and all other reasons warranting excused absences applied to all Sales Employees, regardless of whether they were pregnant. (*Id*. ¶ 85).

Whether any particular set of circumstances qualified for an excuse under the SAG often depended on other applicable AT&T policies. (*Id*. ¶¶ 96, 104, 111). For example, the SAG instructed that absences tied to an approved job accommodation should be excused. (*Id*. ¶ 95). It also directed Sales Employees in need of an accommodation to contact AT&T's Integrated Disability Service Center ("IDSC") to request one. (*Id*. ¶¶ 100, 120). The types of illnesses or conditions that qualified for a job accommodation in the form of time off work depended, in turn, on AT&T's job accommodation policy, as determined by the IDSC in partnership with retail store management. (*Id*. ¶¶ 96, 101). At AT&T, job accommodations were not limited to employees with conditions that qualified as disabilities under the ADA. (*Id*. ¶ 99). Similarly, the SAG identified as excused absences due to an approved FMLA Leave. (*Id*. ¶ 103). Whether an absence qualified as approved FMLA Leave turned on AT&T's FMLA policy as applied by AT&T's FMLA Operations Team ("FMLA Team"). (*Id*. ¶¶ 104, 107). Again, these policies and their corresponding approval process applied to all Sales Employees equally, whether pregnant or not. (*Id*. ¶ 85).

AT&T provided Sales Employees and supervisors with resources to assist with questions about the SAG, whether an absence should be excused, and the process for obtaining an excuse under the SAG. (*Id*. ¶¶ 118-122). AT&T trained Sales Employees, store managers, and other

supervisors on the SAG and its suite of employment policies related to leaves and attendance.[3]
(*Id.* ¶¶ 90, 92, 93, 97). From this training, Sales Employees knew that the SAG and AT&T's
attendance-related policies were available to them, on-demand, on AT&T's intranet
(HROneStop), Retail web portal (myCSP), and physical in-store breakrooms. (*Id.* ¶ 118). Sales
Employees could also contact their store manager, their local HR representative, their union
representative, or a toll-free hotline with questions. (*Id.* ¶¶ 82, 119, 121).

### C.    Plaintiff's Attendance History

Plaintiff's attendance issues began almost immediately upon hire, before she became
pregnant. Within her first five months of work, Plaintiff was tardy six times and absent four
times. (*Id.* ¶ 123). On five of these occasions, Plaintiff spoke with her Assistant Store Manager
about the extenuating circumstances that caused her to miss work, and he excused her. (*Id.* ¶
124). On the other five occasions, Plaintiff did not request an excuse and therefore incurred
points under the SAG. (*Id.*).

On August 9, 2014, after Plaintiff incurred four points, Plaintiff's store manager gave her
a Counseling Notice that reminded her of her responsibility to be at work as scheduled. (*Id.* ¶¶
145, 149). It further warned that failure to improve her attendance could result in further
discipline, up to and including dismissal. (*Id.* ¶ 149). The Counseling Notice instructed Plaintiff
to contact AT&T's FMLA Team or the IDSC if she had questions about how to excuse an
absence under an approved leave of absence, job accommodation, or short-term disability leave.
(*Id.* ¶ 150).

---

[3] AT&T also trained its Sales Employees and their supervisors on the company's Equal
Employment Opportunity ("EEO") Policy, which expressly prohibited discrimination on the
basis of sex and pregnancy. (*Id.* ¶ 91).

Plaintiff's attendance issues continued after she became pregnant. Between November 2014 and April 2014, Plaintiff was absent eight more times. (*Id*. ¶ 125). Whenever Plaintiff returned to work, and told her store manager that her absence was due to illness, he immediately directed her to contact the IDSC to excuse her absence under an approved job accommodation. (*Id*. ¶ 126). Plaintiff never contacted the IDSC. (*Id*. ¶ 102). As a result, her absences remained unexcused, and she incurred points under the SAG. (*Id*. ¶ 148). By April 24, 2015, Plaintiff received from her store manager a second Counseling Notice (after 4.25 points, on December 27, 2014), a Written Warning (after 5.50 points, on February 14, 2015), and a Final Written Warning (after 6.0 points, on April 24, 2015). (*Id*. ¶¶ 146-148). Each time Plaintiff and her store manager sat down to review her attendance history, and its resulting discipline, both her store manager and the written discipline document she received instructed Plaintiff to call the IDSC if she wanted a job accommodation to excuse her time off work. (*Id*. ¶ 150). Still, Plaintiff failed to contact the IDSC, and her absences remained unexcused. (*Id*. ¶ 102).

Plaintiff continued to miss work in April, May, and June 2015. (*Id*. ¶¶ 56, 72). On one of these occasions, Plaintiff initiated a request to excuse her absence, and submitted to AT&T documentation that certified her need to attend a medical appointment on the date of that absence (May 26, 2015). (*Id*. ¶ 130).  AT&T approved Plaintiff's request for FMLA. (*Id*. ¶ 142). As a result, Plaintiff's May 26 absence was excused and Plaintiff did not incur a point. (*Id*. ¶ 143). For the remaining dates, however, Plaintiff failed to submit the documentation requested, and her requests to excuse the absence under FMLA were denied.

On May 5, 2015, Plaintiff requested an FMLA excuse for her May 4, 2015 absence. (*Id*. ¶ 127). That same day, AT&T's FMLA Team informed Plaintiff that her healthcare provider needed to submit documentation to support this request (*i.e.*, the FMLA4 form) by May 20. (*Id*.).

5

On May 9, AT&T received an incomplete FMLA4 form from Plaintiff's doctor, which was missing two of the four required pages, and aside from Plaintiff's name and date of birth, was otherwise blank. (*Id*. ¶ 128). On May 12, the FMLA Team notified Plaintiff of these deficiencies and extended her deadline to May 27. (*Id*. ¶ 129).

On May 26, Plaintiff's doctor provided to AT&T another FMLA4 form. (*Id*. ¶ 130). That form certified that Plaintiff (i) would be incapacitated following the birth of her child *in June*, (ii) had a medical appointment on May 21, and (iii) was scheduled for a follow-up visit on May 26— but it did not indicate that Plaintiff needed to miss work *on May 4* as a result of her pregnancy. (*Id*.). The FMLA Team informed Plaintiff that the documentation "does not indicate you were ill and/or incapacitated on the date(s) for which you are requesting FMLA" and gave her until June 17 to remedy that deficiency. (*Id*. ¶ 131). Plaintiff failed to submit any documentation supporting her May 4 absence by that deadline and, as a result, AT&T denied her request for FMLA. (*Id*. ¶¶ 132-33). In discovery, she testified that her doctor refused to certify that the absence was pregnancy-related. (*Id*. ¶ 132).

Then, on May 20, 2015, Plaintiff requested an FMLA excuse for her May 16, 2015 absence. (*Id*. ¶ 136). On three separate occasions, AT&T contacted Plaintiff to inform her that the documentation submitted (*i.e.* the same FMLA4 form submitted in connection with her prior, May 4 absence, which did not reflect that Plaintiff was unable to work due to her pregnancy on May 16, either) was insufficient. (*Id*. ¶ 137). Plaintiff failed to later submit any documentation supporting that absence, and as a result, AT&T denied her request for FMLA. (*Id*. ¶ 139). Indeed, during the course of her employment, Plaintiff *never* submitted to AT&T a copy of her medical records from the medical center she is now-known to have visited on May 16 (or for that matter any other medical records related to that absence).  (*Id*. ¶ 141).

Plaintiff incurred additional points for each of these unexcused absences and, as a result of her persistent history, Plaintiff's Store Manager terminated her employment on July 16, 2015, for unsatisfactory attendance. (*Id*. ¶ 73).

## III.   ARGUMENT

Plaintiff asks this Court for summary judgment on Count I of the Complaint despite presenting *no evidence* of discriminatory intent and *no evidence* even remotely suggesting that others similar in their inability to come to work were treated differently than she was while pregnant. Instead, she wrongly asserts that AT&T's attendance guidelines are "facially discriminatory" and speculates that those guidelines "automatically excused" absences for certain categories of workers but not others.

Where a plaintiff moves for summary judgment on an employment discrimination claim, she bears *both* the initial burden of production on the motion *and* the ultimate burden of persuasion that her claim would prevail at trial. Fed. R. Civ. P. 56(a); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Summary judgment is warranted only where the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "a plaintiff moving for summary judgment must essentially show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Armfield v. Key Plastics, LLC*, No. 1:08 CV 110, 2011 U.S. Dist. LEXIS 80482, at *30 (N.D. Ind. July 22, 2011).

A non-movant, here AT&T, is not required to refute a movant's assertion if that assertion is unsupported by fact. *McLaughlin Equip. Co. v. Servaas*, No. IP98-0127-C-T/K, 2004 WL 1629603, at *5 (S.D. Ind. Feb. 18, 2004) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything."). The Court must

7

review the record "taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Also, the record and all reasonable inferences that may be drawn from it are to be viewed in a light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52 (1985).

On the present record, Plaintiff has not sustained her burden under Rule 56 and her motion for partial summary judgment should be denied.

### A.     The SAG is facially neutral.

The Pregnancy Discrimination Act ("PDA") prohibits employers from discriminating on the basis of "pregnancy, childbirth, or related medical conditions," and provides that "women affected by pregnancy, childbirth, or related medical conditions *shall be treated the same* for all employment-related purposes…as other persons not so affected *but similar in their ability or inability to work*." 42 USC 2000e(k) (emphasis added). Consistent with the PDA, the SAG treats pregnant and non-pregnant employees who are similar in the ability or inability to work equally.

Plaintiff claims that the SAG was "facially discriminatory" because the word "pregnancy" did not appear in the document. (Plf. Br. 5). She is wrong for four reasons.

First, *on its face*, the SAG applied equally to *all* Sales Employees in Plaintiff's region, regardless of whether they were pregnant.[4] AT&T clearly prohibited discrimination against pregnant employees, including in its application of the SAG. (SMF ¶ 85). Where a policy is facially neutral, it is impossible to conclude, without inferring, that any distinction in wording

---

[4] The fact that Plaintiff was the only pregnant Sales Employee and the only person terminated for attendance during the 15 months she was employed is hardly evidence to the contrary. (*See* Plf. Br. 15). Plaintiff fails to acknowledge, for example, that during her employment, the Cassopolis Street store was staffed by only four other Sales Employees. (SMF ¶ 78). She also fails to disclose that only a few months after her employment ended, AT&T terminated one of her male co-workers at the Cassopolis Street store due to unsatisfactory attendance, including for an absence that occurred during Plaintiff's employment. (*Id*. ¶ 79).

was based upon an intent to discriminate against pregnant employees. *See Young v. United Parcel Servs.*, 575 U.S. 206, 212–13 (2015) (a workplace policy that does not expressly rely on a protected characteristic cannot constitute direct evidence of discriminatory intent).

Second, managers were trained not to apply their discretion in a discriminatory manner, and Plaintiff offers no evidence to suggest that they did. Directing attention away from the face of the policy, Plaintiff complains that her store manager never used his discretion to excuse her pregnancy-related absences. But her store manager exercised his discretion on equal terms with respect to *all* Sales Employees; he only used it to remedy technical timecard errors, such as when a Sales Employee—pregnant or not pregnant—showed up to work but forgot to "punch in." (SMF ¶ 116). Indeed, on multiple occasions *during her pregnancy*, Plaintiff arrived to work but forgot to "punch in"—and her store manager used his discretion to ensure she did not receive a point. (*Id*. ¶ 117).

Third, Plaintiff's *own experience* confirms that the SAG is not discriminatory. AT&T excused under the SAG Plaintiff's absences that were shown to be pregnancy-related. For example, Plaintiff was absent on May 26, 2015, despite being scheduled to work. (*Id*. ¶ 67). That same day, AT&T received documentation from Plaintiff's medical provider certifying that she was pregnant and that she needed to be seen by her doctor on May 26. (*Id*. ¶ 130). AT&T reviewed Plaintiff's request and determined that she timely submitted documentation justifying her pregnancy-related absence on that date. (*Id*. ¶ 142). AT&T approved Plaintiff's FMLA request to excuse her May 26 occurrence, and she did not incur any point. (*Id*. ¶ 143). On another instance, Plaintiff submitted documentation to AT&T to support that a six-week period of absence beginning June 2, 2015, was pregnancy-related. (*Id*. ¶ 114). AT&T reviewed the

documentation and, seeing evidence of incapacitation due to pregnancy on those dates (she gave birth), granted excused absences for them all. (*Id*.).

Fourth, Plaintiff claims the SAG is facially discriminatory because it did not afford *preferential* treatment to pregnant workers. But the PDA requires only *equal* treatment. *See Young v. UPS*, 575 U.S. 206, 222 ("We doubt that Congress intended to grant pregnant workers an unconditional most-favored-nation status. The language of the statute does not require that unqualified reading."). The PDA does not require employers to excuse absences just because the employee is pregnant, even according to the EEOC guidance Plaintiff herself cites[5]: "Title VII does not…require an employer to grant pregnancy-related medical leave or parental leave or to treat pregnancy-related absences *more favorably* than absences for other medical conditions."[6] Any employee with less than a year of tenure would be denied FMLA under AT&T's policies— whether pregnant, or not.

**B.    Plaintiff has not met her burden under Rule 56.**

Plaintiff has offered no direct evidence of discrimination. Therefore, she is proceeding under the three-prong, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *as modified by Young v. United Parcel Servs. Inc.*, 575 U.S. 206 (2015). Under that approach, she bears the burden of first establishing a *prima facie* case of

---

[5] Plaintiff cites two notices by the EEOC (and again, *no record evidence*) in an effort to support her interpretation of the PDA. (Plf. Br. 17, n. 20). It is unpersuasive for several reasons. First, one notice is not even "enforcement guidance"; it is a technical assistance document – akin to a fact sheet – issued by the EEOC. As to the second, nowhere does it support Plaintiff's contention that AT&T's policies were "expressly disparate" toward pregnant workers simply because they denied FMLA to pregnant workers with less than a year of tenure. Indeed, as quoted above, it expressly *supports* the viability of AT&T's policies.

[6] U.S. Equal Employment Opportunity Commission, *Enforcement Guidance on Pregnancy Discrimination and Related Issues* (June 25, 2015), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues (emphasis added, citations omitted).

10

pregnancy discrimination. She must show that: (1) she was pregnant; (2) she sought an accommodation; (3) AT&T did not accommodate her; and (4) AT&T did accommodate others who were "similar in their ability or inability to work" – *i.e.*, whose "situation cannot reasonably be distinguished from" her own. *Young*, 575 U.S. at 229. If Plaintiff could meet that burden, AT&T would identify its "legitimate, non-discriminatory reasons" for not excusing her absences—namely, that she failed to provide supporting documentation consistent with AT&T policy. (*Id*.) Then Plaintiff would bear the ultimate burden of proving that any reasonable juror *must* find that AT&T's stated reasons were pretextual. (*Id*.)

Here, Plaintiff fails even to meet her *prima facie* burden. Even if she had met that burden, summary judgment still would be improper because she fails to present admissible evidence that, when considered in light of AT&T's reasons for denying her an excused absence, would *compel* a jury to find a showing of intentional pregnancy discrimination.

### 1.      Plaintiff fails to meet her *prima facie* burden.

Plaintiff's pregnancy discrimination claim cannot succeed unless she can show her employer "accommodate[d] others similar [to her] in their ability or inability to work." (Plf. Br. at 12). Yet she fails to identify *any person*—let alone any *similarly-limited* person whose situation a reasonable juror *could not distinguish* from her own—whom AT&T treated more favorably.

Plaintiff speculates that other Cassopolis Street store Sales Employees "*may have* been absent" for "myriad reasons" such as "disability, jury duty, bereavement, military leave, union business, and court subpoenas." (Plf. Br. 9) (emphasis added). But the theoretical prospect of a comparator cannot satisfy Plaintiff's *prima facie* burden to actually identify one. *See Young,* 575 U.S. at 229. Nor does it satisfy her burden, on a motion for summary judgment, to establish that no reasonable juror could view such a comparator's situation as indistinguishable from her own.

11

*See, e.g.*, *Santos v. Wincor Nixdorf, Inc.*, No. 1:16-CV-440-RP, 2018 U.S. Dist. LEXIS 48736, at

*23–24 (W.D. Tex. Mar. 23, 2018) (finding no *prima facie* case of pregnancy discrimination,

and granting summary judgment for employer, where plaintiff failed to identify even a single

proposed comparator by name, title, or otherwise).

 Plaintiff cites several cases on the importance of identifying a comparator, but none

support her argument that speculation can satisfy the fourth element of a *prima facie* case of

discrimination. (Plf. Br. 15-16).[7] Rather, the plaintiffs in each of these cases identified a *specific*

*cohort of identifiable persons* who *did in fact receive a benefit* – none of which Plaintiff does

here. In *Durham*, the court considered whether EMTs who could not lift more than 10 or 20

pounds were treated more favorably than a pregnant EMT who could not lift more than 50

pounds. *Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1281 (11th Cir. 2020). In her opposition

to the defendant's motion for summary judgment, the plaintiff in *Durham* presented evidence of

*three* EMTs who were granted more favorable treatment. *See Durham v. Rural/Metro Corp.*, No.

4:16-cv-01604-VEH, 2018 WL 7892084 (N.D. Ala. Mar. 19, 2018). Likewise, in *Legg*, the court

considered whether injured corrections officers, who could only perform light-duty versus full-

duty assignments, were treated more favorably than pregnant corrections officers similarly

limited in their ability to perform full-duty assignments. *Legg v. Ulster Cnty.*, 820 F.3d 67, 70

---

[7] These cases are also unpersuasive because, like *Young*, they involve scenarios where a plaintiff and her proposed comparators were similarly unable to perform *aspects* of their jobs. This is a case about attendance, where Plaintiff was allegedly unable to be at work. Moreover, Plaintiff relies on decisions concerning whether summary judgment properly was granted to defendants. It is one thing for an appellate court to say that a reasonable juror could possibly agree that these plaintiffs and their proposed comparators were sufficiently similar to create a question of fact for a jury, and quite another to say that they proved their claims *so convincingly* that no juror could reasonably find for the defendant. On the posture before this Court, Plaintiff must show the latter. *See* Section III.B.2, below.

(2d Cir. 2016). Again, the plaintiff identified *by name* five individuals who had *in fact* received the more favorable, light-duty assignment. *See Meadors v. Ulster Cnty.*, No. 1:09-cv-550 (FJS/RFT), 2011 WL 12496693 (N.D.N.Y. Apr. 1, 2011), *vacated and remanded sub nom. Legg v. Ulster Cnty.*, 820 F.3d 67 (2d Cir. 2016).

Identifying particular excuses under the SAG gets Plaintiff no further. (Plf. Br. 9). The excuses that Plaintiff invokes, including jury duty, are available to pregnant and non-pregnant employees alike. And an employee who cannot come to work because of a jury summons, for a certain future time and place, *is not similar in her inability to work* as someone (like Plaintiff) who is unexpectedly absent and says, after the fact, that it was because of a medical condition (pregnancy or otherwise). For those situations, AT&T has a process that involves the request for documentation, which Plaintiff sometimes followed and sometimes did not. Absent admissible evidence showing that another employee similar in the inability to work was granted an excuse, however, Plaintiff has not even established a *prima facie* case of discrimination.[8]

Because Plaintiff fails to meet her burden of identifying any person who was so "similar in their ability or inability to work" that their "situation cannot reasonably be distinguished from" hers, her motion must be denied. *Young*, 575 U.S. at 229, 231; *see also Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009) ("Without a similarly situated employee, Plaintiffs cannot present a *prima facie* case and their claim must fail."); *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993) ("Without a *prima facie* case, the plaintiff cannot withstand summary judgment.").

---

[8] Defendant need not exhaust all possible hypotheticals here. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." *McLaughlin*, 2004 WL 1629603, at *5 (citation omitted).

### 2. Plaintiff fails to show that no reasonable jury could believe AT&T's reasons for denying Plaintiff excused absences.

Plaintiff has also failed to meet her burden to show that no reasonable jury would believe AT&T's nondiscriminatory reasons for denying her an excused absence.

Plaintiff has no evidence that AT&T's articulated reasons were a pretext for discrimination, let alone evidence so compelling that no reasonable jury could find for AT&T. To prevail on her burden of pretext and obtain summary judgment in her favor, Plaintiff must show that no reasonable jury could find AT&T's reasons for denying her requested excuses nondiscriminatory. In *Young*, for example, the plaintiff showed that her employer accommodated seven co-workers whose disabilities occurred "off the job" (*e.g.*, knee injuries, stroke, and cancer) despite saying that it could not accommodate plaintiff's disability (*e.g.*, pregnancy) because it had occurred "off the job." *Young*, 575 U.S. at 216–17. The plaintiff also showed a comment by a supervisor that arguably reflected discriminatory intent. *Id*. at 215–16. Finding these contradictions enough for a reasonable jury to find in plaintiff's favor, the Court denied the employer's motion for summary judgment. *Id*. at 300.

Plaintiff has not shown that AT&T imposed on her – or any pregnant employee – a significant burden to obtain an excused absence due to pregnancy or a pregnancy-related condition. AT&T requires Sales Employees who miss work due to pregnancy – or any other medical condition – to provide documentation certifying the need for that absence. A reasonable juror could certainly find that this requirement is reasonable.

Second, Plaintiff has not shown that AT&T imposes a *lower* burden for non-pregnant employees than for pregnant employees similar in their ability or inability to work. Plaintiff speculates that AT&T "automatically excused" absences for non-pregnant categories of Sales Employees, while absences for pregnant Sales Employees were not. She repeats this several

14

times in her brief. But not one of those instances contains a citation to *any* evidence in the record[9]—let alone evidence indicating that AT&T "automatically excused" under the SAG *any absence*, for *any* Sales Employee, without first requiring documentation. Tellingly, Plaintiff does not repeat this speculation in her Statement of Undisputed Material Facts.[10]

The evidence establishes that AT&T required documentation from non-pregnant Sales Employees for absence types on the SAG's non-exhaustive list. For example, the SAG excused absences taken under an approved FMLA leave. To obtain FMLA leave under AT&T's FMLA policy, a Sales Employee needed to (1) notify her supervisor of her absence; (2) request to excuse that absence; and (3) submit a completed FMLA4 form to AT&T within the allotted deadline. (SMF ¶ 106). This process applied to *all* Sales Employees, not just pregnant Sales Employees. And when Plaintiff failed to follow it, AT&T legitimately denied her request for excuse.

Finally, Plaintiff asserts without citation to evidence that AT&T refuses to grant intermittent leave to pregnant employees unless they qualify for FMLA or an ADA accommodation. (Plf. Br. 17). She is wrong. Pregnant Sales Employees *can* receive intermittent time off work by pursing a job accommodation through the IDSC. (SMF ¶ 97-99). AT&T never granted Plaintiff a job accommodation in the form of time off work *because she never asked for*

---

[9] The fact that AT&T's corporate designee—who is not a lawyer—was not familiar with "the 2015 Supreme Court decision that addressed pregnant workers' need to be accommodated on the job" is hardly evidence of anything. (Plf. Br. 16-17). Ms. Miller knew that AT&T prohibited pregnancy discrimination, and that it afforded pregnant workers with access to job accommodations, despite being unable to recall a court case from five years ago by name. (SMF ¶¶ 43, 44).

[10] Again, Defendant has no obligation to produce evidence to refute Plaintiff's claim. *See McLaughlin,* 2004 WL 1629603, at *5 ("If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." (citation omitted)).

*one*. AT&T informed Plaintiff that she could pursue an accommodation for excused time off work, and told her no less than eight times that she should contact the IDSC to pursue one. (*Id*. ¶ 100). The SAG included this instruction. (*Id*. ¶ 120). Each of Plaintiff's four discipline documents relayed it to her. (*Id*. ¶ 150). Plaintiff's store manager relayed this instruction to her directly. (*Id*. ¶ 126). And it was printed **in bold** on each of Plaintiff's FMLA denial letters. (*Id*. ¶ 120). But Plaintiff never called the IDSC to request an accommodation. (*Id*. ¶ 102).

### C.    Plaintiff fails to demonstrate that AT&T was aware that her unexcused absences were pregnancy-related.

Beyond Plaintiff's failure to meet her *prima facie* burden and show an *irrefutable* case of pretext, there remains an additional genuine dispute of material fact that precludes summary judgment: whether AT&T was aware that absences for which Plaintiff received points were pregnancy-related.

In an attempt to sidestep the facts underlying this genuine dispute, Plaintiff contends categorically that it was "impossible" for her to have avoided points under the SAG for absences she incurred early in her pregnancy. (Plf. Br. 6). But Plaintiff was not foreclosed from obtaining an excused absence under the SAG just because she was not FMLA-eligible. Plaintiff simply chose not to pursue one.

For example, when Plaintiff missed work on November 11, and December 6, 8, and 11, 2014 (while pregnant, but before she was FMLA-eligible), her store manager immediately directed her to contact the IDSC to excuse her absences under an approved job accommodation.[11] (SMF ¶ 126). Plaintiff never contacted the IDSC. (*Id*. ¶ 102). When Plaintiff received a written Counseling Notice from her store manager that December, she was *again*

---

[11] As already discussed in Section III.B.2, above, it is undisputed that AT&T provided job accommodations to its employees in the form of time off work, and that employees did not need an ADA-qualifying disability to qualify for such an accommodation.

instructed to call the IDSC if she wanted a job accommodation to excuse her time off work. (*Id*. ¶ 150). But again, Plaintiff failed to contact the IDSC, and her absences remained unexcused. (*Id*. ¶ 102). Plaintiff was then absent on three more occasions before she qualified for FMLA – February 4, March 9, and April 3, 2015. (*Id*. ¶ 125). But Plaintiff never called the IDSC to inquire about a job accommodation for those dates either, despite further written reminders that she should do so. (*Id*. ¶¶ 102, 120).

Plaintiff's persistent disregard for AT&T's instructions continued after she became FMLA-eligible, too. The first time Plaintiff requested to excuse an absence under FMLA, for example, she submitted a near-blank certification form to AT&T. (*Id*. ¶ 127-28). That form provided AT&T with no reason to believe she had been absent from work (on May 4) due to a pregnancy-related condition, as it contained nothing more than Plaintiff's name and date of birth. (*Id*. ¶ 128). After AT&T extended Plaintiff's deadline to submit additional documentation, Plaintiff's doctor provided to AT&T another certification form. (*Id*. ¶ 130). But again, that form did not indicate that Plaintiff needed to miss work *on the date she was absent* (May 4), as a result of her pregnancy or any other condition. (*Id*. ¶ 131). The form merely disclosed Plaintiff's *upcoming* ob-gyn appointments (May 21 and 26), and certified that she would be unable to work *following* the birth of her child (in June). (*Id*. ¶ 130). Having no reason to believe that Plaintiff was "ill and/or incapacitated on the date(s) for which [she was] requesting FMLA," AT&T denied Plaintiff's first request for FMLA. (*Id*. ¶ 133).[12]

---

[12] As shown in Defendant's SMF, Plaintiff's recitation of her medical history obscures the reality that Plaintiff did not provide her medical records to AT&T, let alone in time to have them considered. Plaintiff may have seen her ob-gyn on May 4, 2015, but AT&T did not receive that medical record until the day of her termination and more than a month past Plaintiff's thrice-extended deadline to submit documentation in support of her May 4 absence. (SMF ¶ 140). Plaintiff can hardly claim that AT&T was on notice of these facts.

Thereafter, Plaintiff requested an excuse for an additional absence date under FMLA (May 16). (*Id.* ¶ 136). On three separate occasions, AT&T contacted Plaintiff to inform her that the documentation it had received to date (*i.e.* the same form submitted in connection with her prior, May 4 absence) was insufficient. (*Id.* ¶ 137). As already discussed, that form merely indicated that Plaintiff had *forthcoming* ob-gyn appointments (on May 21 and 26), and certified that she would be unable to work *following* the birth of her child (in June). It did not reflect that Plaintiff was unable to work due to her pregnancy, or any other condition, on May 16. Yet despite these reminders, Plaintiff did not submit additional documentation to AT&T. As a result, AT&T denied her request for FMLA. (*Id.* ¶ 139). Indeed, during the course of her employment, Plaintiff *never* submitted to AT&T a copy of her medical records from the medical center she is now-known to have visited on May 16 (or for that matter any records to substantiate that her absence on that date was pregnancy-related). (*Id.* ¶ 141).

Therefore, Plaintiff has not even established that AT&T was aware that these unexcused absences were pregnancy-related. A reasonable jury could certainly conclude that AT&T denied her excuse request for nondiscriminatory reasons.

## IV.    CONCLUSION

For all of these reasons, Plaintiff fails to meet her burden under Rule 56. Plaintiff's Motion for Partial Summary Judgment should be denied.

Dated:  New Canaan, Connecticut
        December 17, 2021

By: _____

Kenneth W. Gage*
PAUL HASTINGS LLP
200 Park Avenue, 30th Floor
New York, New York 10166
Tel: (212) 318-6000
kennethgage@paulhastings.com

Alex J. Maturi*
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Tel: (312) 499-6000
alexmaturi@paulhastings.com

Christine L. Cedar*
PAUL HASTINGS LLP
2050 M Street NW, 11th Floor
Washington, DC 20036
Tel: 202-551-1700
christinecedar@paulhastings.com

***Counsel for AT&T Mobility Services LLC***

*pro hac vice*

19

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I caused the foregoing **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Christine L. Cedar*

Christine L. Cedar